FILED
U.S. DISTRICT COURT
SAVA... DIV.
2013 JUL 25 PM 9: 15
CLERK
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

JOSEPH WILLIAMS,

    Petitioner,

v.

WARDEN CARL HUMPHREY,

    Respondent.

CASE NO. CV412-106

## ORDER

In 2004, Petitioner Joseph Williams was convicted and sentenced to death by the Superior Court of Chatham County for the murder of Michael Deal. After the completion of his direct appeal and state habeas court proceedings, Williams filed a petition for habeas corpus in this Court, pursuant to 28 U.S.C. § 2254, challenging his conviction and death sentence on a number of grounds. Petitioner also filed the instant "Motion for Leave to Conduct Discovery." (Doc. 30.) Therein, he claims that discovery is necessary for the full and proper development of evidence and the presentation of his habeas case. Respondent opposes this motion. (Doc. 31.) After careful consideration and for the reasons discussed below, Petitioner's motion is **GRANTED IN PART**, **DENIED IN PART**, and **RESERVED IN PART**.

# BACKGROUND

I. <u>FACTUAL HISTORY</u>

The facts of this case were set forth by the Supreme Court of Georgia:

> [O]n July 24, 2001, Williams was a jail inmate at the Chatham County Detention Center. <u>See</u> OCGA § 17-10-30(b)(9) ("murder was committed by a person in, or who has escaped from, the lawful custody of a peace officer or place of lawful confinement"). Seven other inmates, including Michael Deal, were being held in the same unit as Williams. Williams and four of the other inmates, Leon McKinney, Pierre Byrd, Michael Wilson, and John McMillan, discovered a loose window and used an improvised chisel to chip away at the wall around it. Deal inquired what the men were doing but left when he was told "to mind his own business." Williams and other inmates began to suspect that Deal had informed, or was going to inform, the jail authorities about the escape plan. McKinney suggested stabbing Deal with the improvised chisel, but Williams objected that there would be too much blood and that their plan would be frustrated. The group then carried out an alternative plan to strangle Deal and make the killing appear to be a suicide. McKinney engaged Deal in a discussion about their relative body sizes and then, facing Deal, lifted him in a "bear hug." Williams then began strangling Deal from behind with an Ace bandage. Deal fell to the floor but did not immediately lose consciousness. The evidence is unclear whether it was Wilson or Byrd, but one of those two men then assisted Williams by taking one end of the Ace bandage and completing the strangulation in a "tug-of-war." Byrd invited Anthony King, an inmate who had been friendly with Deal, into Byrd's cell to distract King as Deal's body was moved. Williams then dragged Deal's body to Deal's cell, flushed the Ace bandage down the toilet, cleaned up blood and hair on the floor with a rag, flushed the rag, tied a bed sheet around Deal's neck, and finally, with the assistance of McKinney and McMillan, lifted Deal's body and tied the bed sheet to a

grate in the ceiling to make the death appear to be a suicide. After the murder, Williams and Byrd favored also killing King and Dewey Anderson, but McKinney and McMillan objected. Byrd, later troubled by dreams about the victim, contacted his attorney, passed a note about the murder to a jail guard, and then directed authorities to the improvised chisel, the loosened window, and a letter about the murder written to him by Williams. Williams confessed in an audiotaped interview conducted by a GBI agent.

In support of the OCGA § 17-10-30(b)(1) aggravating circumstance, the State presented three certified convictions of Williams, one for the armed robbery of Harry Jaymes, one for the murder of Iris Hall, and one for the murder of Taureen Graham. The State also presented testimony regarding those three crimes. Harry Jaymes testified that Williams delivered some stereo equipment, that he gave Williams a cash gratuity from a bag of money, and that Williams returned with an accomplice two days later on May 27, 1999, hit Jaymes in the head repeatedly with a handgun, and threatened to kill Jaymes if he did not reveal where the bag of money was. Jaymes escaped, threw a brick through his car's window to set off the alarm, and had a neighbor call police. A GBI agent testified that Williams confessed during an audiotaped statement, which was played for the jury, to the murders of Taureen Graham and Iris Hall. Williams explained in the statement that he had been hired to murder Taureen Graham's older brother but that, on July 31, 1999, he murdered the wrong person. Janet Cooper testified that, during a drug deal on July 11, 1999, Williams held Cooper and Iris Hall at gunpoint, placed Cooper in a bathroom, and searched Hall's house. As Cooper escaped from the bathroom window, she heard the shots that killed Hall. At Williams's trial for Hall's murder, Williams "made slashing gestures and gunshot gestures" toward Cooper. Williams later, in March 2004, gave a letter to Cooper in which he stated, "I've killed many men before that incident, even killed a couple afterwards." The letter continued as follows:

3

> August will be an even five years of incarceration for me. In those five years, I've killed two men, slit an officer's throat with a razor, stabbed two inmates, and whipped my first lawyer's ass. I am who I am, Janet. Those walls can't stop me.

The evidence also showed that Williams had committed several other criminal acts. A criminal defense attorney testified that Williams struck him repeatedly during a jailhouse interview on September 28, 2001. A prison guard testified that Williams slashed his face and throat with a razor blade embedded in a newspaper on December 17, 2001. Testimony from two prison officers to whom Williams confessed and testimony from the surviving victim showed that Williams murdered one prison inmate and repeatedly stabbed another with an improvised weapon on January 26, 2003. In his audiotaped confession about the 2003 prison attack, Williams stated that he had also planned to kill a third inmate that day but the man's cell door had been locked.

<u>Williams v. Georgia</u>, 281 Ga. 87, 88-89, 635 S.E.2d 146, 147-49 (2006).

II. <u>PROCEDURAL HISTORY</u>

On April 5, 2004, Petitioner pleaded guilty to malice murder. (Doc. 11-4 at 52-55.) On April 7, 2004, Petitioner was sentenced to death by lethal injection. (Doc. 9-2 at 73-74.) The jury found, beyond a reasonable doubt, the existence of two statutory aggravating factors. First, that the murder of Michael Deal was committed while Petitioner was in a place of lawful confinement. Second, that the murder of Michael Deal was committed by a person

with a prior record of conviction for murder and armed robbery. (Id.)

The trial court denied Petitioner's motion for a new trial. The Georgia Supreme Court affirmed his convictions and sentence on September 18, 2006. Williams, 281 Ga. 87, 635 S.E.2d 146. A petition for writ of certiorari to the United States Supreme Court was denied on April 21, 2008. Williams v. Georgia, 553 U.S. 1004, 1004 (2008).

On March 16, 2009, Petitioner filed a state habeas corpus petition in the Superior Court of Butts County. (Doc. 11-30.) In March of 2010, Petitioner filed an amended petition. (Doc. 12-2.) The court conducted an evidentiary hearing on July 12, 2010, and ultimately denied the petition, as amended, on October 18, 2010. (Doc. 22-33.) Further attempts to appeal were similarly unavailing. See Williams v. Humphrey, ___ U.S. ___, 133 S. Ct. 530, 530 (2012).

After filing a § 2254 petition in this Court, Petitioner filed the instant motion for leave to conduct discovery. Petitioner requests that the Court permit him to conduct discovery under Rule 6 of the Rules Governing Cases Brought Under 28 U.S.C. § 2254. (Doc. 30-1 at 1.) Specifically, Petitioner seeks discovery towards Petitioner's second claim that the State suppressed

material exculpatory and impeachment evidence. (Id.) In support of Petitioner's claims, Petitioner ask for leave of Court to obtain certain files currently in the possession of the Chatham County District Attorney's office, the Georgia State Board of Pardons and Paroles, and the Federal Drug Enforcement Agency. Respondent contends that Petitioner has not established due diligence or good cause for granting discovery, as required by Rule 6(a) of the Rules Governing § 2254 proceedings, as interpreted in light of the applicable provisions of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which govern federal habeas corpus proceedings. (Doc. 31.)

**ANALYSIS**

I. STANDARDS GOVERNING DISCOVERY IN FEDERAL HABEAS CORPUS CASES

"A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." Bracy v. Gramley, 520 U.S. 899, 904 (1997). Under AEDPA, if a habeas petitioner has failed to develop the factual basis for his claims in state court proceedings as a result of his own lack of diligence, he must satisfy the stringent conditions of 28 U.S.C. § 2254(e)(2) before the district court should hold an

evidentiary hearing.[1] Isaacs v. Head, 300 F.3d 1232, 1249 (11th Cir. 2002) ("The discovery provisions of 2254(e)(2) only apply if the petitioner was not reasonably diligent in trying to develop the factual record while in state court."). " 'Diligence for purposes of the opening clause depends upon whether the prisoner made a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court.' " Id. (quoting Williams v. Taylor, 529 U.S. 420, 435 (2000)).

Where a petitioner has been diligent, Rule 6(a) of the Rules Governing § 2254 Cases permits discovery upon a

---

[1] Section 2254(e)(2) states that

> [i]f the applicant has failed to develop the factual basis of a claim in state court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that -
>
> (A) the claim relies on -
>
> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2).

showing of good cause. "In interpreting the good cause portions of this rule, the Supreme Court noted that 'where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief, it is the duty of the court to provide the necessary facilities and procedures for an adequate inquiry.'" Isaacs v. Head, 300 F.3d 1232, 1248 (11th Cir. 2002) (quoting Bracy, 520 U.S. at 908-09). A petitioner must set forth specific allegations of fact, as opposed to conclusory assertions, because Rule 6 does not authorize "fishing expeditions." See Ward v. Whitley, 21 F.3d 1355, 1367 (5th Cir. 1994).

In this case, Petitioner requests permission to obtain files from the Chatham County District Attorney's Office relating to Georgia v. Joseph Williams, Case No. CR01-93371; files from the Georgia Board of Pardons and Paroles ("Board") relating to Pierre Byrd; and files from the Drug Enforcement Agency ("DEA") relating to the victim and purported confidential informant Michael Deal. According to Petitioner, this information is critical to a Brady claim he has filed as part of his § 2254 petition.[2]

---

[2] The Supreme Court held in Brady v. Maryland, 373 U.S. 83, 87 (1963), that "the suppression by the prosecution of

Respondent argues that Petitioner's requests should be denied because Petitioner did not exercise due diligence at the state court level and has not shown good cause for the requested discovery. Respondent also claims that some issues have been procedurally defaulted. After careful consideration of each of Petitioner's requests, the Court finds as follows.

II.  DISTRICT ATTORNEY'S FILES

Respondent argues that Petitioner is not entitled to discovery of the District Attorney files because he did not exercise sufficient due diligence at the state habeas level warranting discovery of the information he now seeks.

---

evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment." Thus, the evidence in a Brady violation "must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." Strickler v. Greene, 527 U.S. 263, 281-82 (1999). The prejudice prong is satisfied if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." United States v. Bagley, 473 U.S. 667, 682 (1985). To do so, a court evaluates each undisclosed item and then makes a determination about their "cumulative effect." Kyles v. Whitley, 514 U.S. 419, 436-37. For present purposes, "[p]romises made by the state to a witness in exchange for his testimony relate directly to the credibility of the witness. A prosecutor has a duty to disclose evidence of any promises made by the state to a prosecution witness in exchange for his testimony." Moore v. Kemp 809 F.2d 702, 719 (11th Cir. 1987) (citing Giglio v. United States, 405 U.S. 150 (1972)).

Petitioner contends that the withheld portions of the District Attorney file "likely contain information regarding the prosecution's use of Pierre Byrd as its star witness and the benefits Byrd may have been promised or otherwise anticipated receiving as a result of his assistance." (Doc. 30-1 at 13-14.)

As part of Petitioner's August 29, 2009 state habeas proceedings, he filed a "Motion to Compel Production of a Privilege Log of the District Attorney's Files and for In Camera Inspection," requesting that the state habeas court order the Chatham County District Attorney's office to compile a privilege log detailing any documents withheld pursuant to Petitioner's June 2008 open records request. (Doc. 27-10.) The District Attorney's office created a privilege log and indicated that those items withheld were "juror questionnaire[s] with attorney's handwritten notes, attorney notes for trial preparation, trial strategy, and juror questionnaire/information, and inter-office attorney emails." (Doc. 28-6 at 9.) After the state habeas court denied Petitioner's motion, he renewed his request—asking the state habeas court to compel the District Attorney to provide the privilege log documents to Petitioner. (Id. at 1-5.) Ultimately, the state habeas court denied Petitioner's renewed motion.

Petitioner contends, and the facts seem to indicate, that he made a reasonable effort to investigate and pursue this information during his state habeas review. Although he was prevented from obtaining the privilege log documents, he attempted to obtain them through an initial motion to compel, a later renewed motion, and argument at the July 12, 2010 evidentiary hearing.[3] In light of these efforts, it does not appear that AEDPA bars discovery for lack of diligence. Limited discovery, moreover, is proper so that Petitioner can determine if any documents relevant to his Brady claim or claims are contained therein.[4] Accordingly, Petitioner's request is **GRANTED** and the District Attorney's file should be provided to Petitioner at this time.

III. BOARD OF PARDONS AND PAROLES FILES

Petitioner also requests that the Court allow him to obtain the parole file of Pierre Byrd—currently in the possession of the Board—to further prove his Brady claim.

---

[3] The Court disagrees with Respondent's position that Petitioner's claims were not diligently pursued because he presented neither testimony or evidence at the evidentiary hearing, nor argued the Brady claim in his post-hearing brief or proposed findings to the state habeas court. The Court addressed the motion at length before the evidentiary hearing and there was extensive discussion between Petitioner's counsel, the Court, and Respondent's counsel. (Doc. 12-4 at 26-36.)

[4] The Court, however, makes no finding at this point regarding the merits of Petitioner's Brady or any other claims.

(Doc. 30-1 at 16-19.) In the alternative, Petitioner requests that the court conduct an in camera review of Byrd's pardon and parole file. Respondent argues that discovery of the Board's files is not proper because Petitioner has failed provide any evidence to demonstrate that he may be entitled to relief. (Doc. 31 at 18-23.)

As part of the state habeas proceedings, the state habeas court granted Petitioner's motion for an in camera inspection of Byrd's parole file. The state habeas court reviewed the documents in camera and found that "the inspection [did] not reveal any potential exculpatory evidence which could be used by Petitioner in the above matter." (Doc. 29-6 at 1.) According to Petitioner, he now "fears that [the state habeas court's] review was insufficient and requests that the records be disclosed." (Doc. 30-1 at 16-17.)

Except for this fear, Petitioner has provided nothing to the Court to suggest that the state habeas court's review of Byrd's parole file was insufficient or improper. Petitioner does not explain what type of information he expects to find in the files that the state habeas court passed over when conducting its review. Petitioner's contention that the state habeas court review was inadequate is mere hypothesis. Such unsupported

12

postulization is insufficient to establish good cause that the facts, if fully developed through discovery, would be any different than from those found by the state habeas court.[5] See Arthur v. Allen, 459 F.3d 1310, 1311 (11th Cir. 2006) ("[G]ood cause for discovery cannot arise from mere speculation . . . discovery cannot be ordered on the basis

---

[5] Petitioner attempts to analogize Moore v. Kemp, 809 F.2d 702 (11th Cir. 1987), to the present case. In Moore, the state habeas court conducted an in camera review of parole, probation, and criminal history files of one of the State's key witnesses, looking for whether he testified with a formal or informal grant of immunity, or with a possible deal for parole or probation. Id. at 726. Critically, the state habeas court in Moore refused to turn over relevant files because it deemed them confidential under Georgia law. Id. After petitioner's habeas claims were denied in federal district court and affirmed by an Eleventh Circuit panel, the Eleventh Circuit sitting en banc, reversed. The en bance Eleventh Circuit held

> that the state habeas court, in denying petitioner's counsel access to that information, denied petitioner the opportunity to prove his claim. It follows that the state habeas hearing was not full, fair, and adequate; therefore, the findings produced by that hearing regarding the Brady/Giglio claim are not entitled to deference [and] the [federal district court] erred in adopting them and in denying petitioner an evidentiary hearing.

Id. at 730. Here, unlike in Moore, the state habeas court's in camera review of the confidential files found there to be no exculpatory evidence that could be used by Petitioner. Here, the state habeas court did not refuse to turn over any relevant exculpatory evidence like in Moore because it found that there was no possible Brady/Giglio evidence to provide. Thus, Petitioner's state habeas hearing on this matter was full, fair, and adequate and the findings are entitled to deference under 28 U.S.C. § 2254(d). See Moore, 809 F.2d at 730.

of pure hypothesis.") And while a Petitioner's right to identify potentially mitigating evidence outweighs any confidentiality concerns, Pope v. Georgia, 256 Ga. 195, 212, 345 S.E.2d 500, 505 (1991), Petitioner's mere fear and speculation does not rise to a level warranting discovery. Thus, Petitioner's request for discovery related to Byrd's parole files is **DENIED**.

IV. DEA FILES ON MICHAEL DEAL

Finally, Petitioner requests that he be provided files from the DEA regarding the alleged confidential informant he murdered. (Doc. 30-1 at 19-21.) According to Petitioner, he diligently sought the information from the DEA through Freedom of Information Act ("FOIA") requests and the State was aware, but never disclosed, Michael Deal's confidential informant status prior to trial. (Id. at 19-20.) Respondent contends that "this information was turned over to trial counsel." (Doc. 31 at 23-24.) While Respondent acknowledges that evidence of Deal's confidential informant status was turned over at the state habeas hearing (id.), Respondent never acknowledges whether Petitioner's trial counsel was ever told of Deal's confidential informant status.

After a review of the voluminous record in this case, the Court is unable to discern when such disclosure took

place, if such disclosure was material, and the extent Petitioner pursued these files during his state habeas proceedings. Further, the Court feels that neither party adequately addressed these matters in their briefs. Accordingly, the Court **RESERVES** ruling on Petitioner's request as to discovery of the DEA files of confidential informant Michael Deal. The parties are **DIRECTED** to each file a single brief within thirty days of this order addressing only the following issue: whether Petitioner developed the factual basis for his claims as it pertains to the DEA files on Michael Deal in his state court habeas proceeding and, if so, whether there is good cause to permit discovery.[6]

**CONCLUSION**

For the foregoing reasons, Petitioner's Motion for Discovery is **GRANTED IN PART**, **DENIED IN PART**, and **RESERVED IN PART**. The parties are **DIRECTED** to each file a single brief within thirty days of this order addressing only the following issue: whether Petitioner developed the factual basis for his claims as it pertains to the DEA files on

---

[6] Because the Court is reserving ruling as to the DEA files, any scheduling order deadlines—namely, the 120-day discovery period (Doc. 26)—will not begin until the Court enters an order specifically addressing discovery of the DEA files. Additionally, any motions for reconsideration of this order shall be considered timely made after the Court's entering of the order addressing discovery of the DEA files.

Michael Deal in his state court habeas proceeding and, if so, whether there is good cause to permit discovery.

SO ORDERED this 25th day of July 2013.

WILLIAM T. MOORE, JR.
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA