**IN THE UNITED STATES DISTRICT COURT FOR**
**THE SOUTHERN DISTRICT OF GEORGIA**
**SAVANNAH DIVISION**

JOSEPH WILLIAMS,         )
                           )
     Petitioner,      )
                           )
v.                       )     CASE NO. CV412-106
                           )
WARDEN CARL HUMPHREY,   )
                           )
     Respondent.     )
                           )

## O R D E R

In 2004, Petitioner Joseph Williams was convicted and sentenced to death by the Superior Court of Chatham County for the murder of Michael Deal. After the completion of his direct appeal and state habeas court proceedings, Petitioner Williams filed a petition for habeas corpus in this Court, pursuant to 28 U.S.C. § 2254, challenging his conviction and death sentence on a number of grounds. Presently before the Court is the parties' briefing on procedural default, cause and prejudice, and fundamental miscarriage of justice. Petitioner is **DIRECTED** that he may brief his claims in his upcoming merits brief in accordance with this order.[1]

---

[1] Accordingly, Respondent's Motion Requesting Ruling on Procedural Issues is **GRANTED.** (Doc. 79.)

I.   FACTUAL HISTORY

The facts of this case were set forth by the Supreme Court

of Georgia:

> [O]n July 24, 2001, Williams was a jail inmate at the
> Chatham County Detention Center. See OCGA § 17-10-
> 30(b)(9) ("murder was committed by a person in, or who
> has escaped from, the lawful custody of a peace
> officer or place of lawful confinement"). Seven other
> inmates, including Michael Deal, were being held in
> the same unit as Williams. Williams and four of the
> other inmates, Leon McKinney, Pierre Byrd, Michael
> Wilson, and John McMillan, discovered a loose window
> and used an improvised chisel to chip away at the wall
> around it. Deal inquired what the men were doing but
> left when he was told "to mind his own business."
> Williams and other inmates began to suspect that Deal
> had informed, or was going to inform, the jail
> authorities about the escape plan. McKinney suggested
> stabbing Deal with the improvised chisel, but Williams
> objected that there would be too much blood and that
> their plan would be frustrated. The group then carried
> out an alternative plan to strangle Deal and make the
> killing appear to be a suicide. McKinney engaged Deal
> in a discussion about their relative body sizes and
> then, facing Deal, lifted him in a "bear hug."
> Williams then began strangling Deal from behind with
> an Ace bandage. Deal fell to the floor but did not
> immediately lose consciousness. The evidence is
> unclear whether it was Wilson or Byrd, but one of
> those two men then assisted Williams by taking one end
> of the Ace bandage and completing the strangulation in
> a "tug-of-war." Byrd invited Anthony King, an inmate
> who had been friendly with Deal, into Byrd's cell to
> distract King as Deal's body was moved. Williams then
> dragged Deal's body to Deal's cell, flushed the Ace
> bandage down the toilet, cleaned up blood and hair on
> the floor with a rag, flushed the rag, tied a bed
> sheet around Deal's neck, and finally, with the
> assistance of McKinney and McMillan, lifted Deal's
> body and tied the bed sheet to a grate in the ceiling
> to make the death appear to be a suicide. After the
> murder, Williams and Byrd favored also killing King

and Dewey Anderson, but McKinney and McMillan objected. Byrd, later troubled by dreams about the victim, contacted his attorney, passed a note about the murder to a jail guard, and then directed authorities to the improvised chisel, the loosened window, and a letter about the murder written to him by Williams. Williams confessed in an audiotaped interview conducted by a GBI agent.

In support of the OCGA § 17-10-30(b)(1) aggravating circumstance, the State presented three certified convictions of Williams, one for the armed robbery of Harry Jaymes, one for the murder of Iris Hall, and one for the murder of Taureen Graham. The State also presented testimony regarding those three crimes. Harry Jaymes testified that Williams delivered some stereo equipment, that he gave Williams a cash gratuity from a bag of money, and that Williams returned with an accomplice two days later on May 27, 1999, hit Jaymes in the head repeatedly with a handgun, and threatened to kill Jaymes if he did not reveal where the bag of money was. Jaymes escaped, threw a brick through his car's window to set off the alarm, and had a neighbor call police. A GBI agent testified that Williams confessed during an audiotaped statement, which was played for the jury, to the murders of Taureen Graham and Iris Hall. Williams explained in the statement that he had been hired to murder Taureen Graham's older brother but that, on July 31, 1999, he murdered the wrong person. Janet Cooper testified that, during a drug deal on July 11, 1999, Williams held Cooper and Iris Hall at gunpoint, placed Cooper in a bathroom, and searched Hall's house. As Cooper escaped from the bathroom window, she heard the shots that killed Hall. At Williams's trial for Hall's murder, Williams "made slashing gestures and gunshot gestures" toward Cooper. Williams later, in March 2004, gave a letter to Cooper in which he stated, "I've killed many men before that incident, even killed a couple afterwards." The letter continued as follows:

> August will be an even five years of incarceration for me. In those five years, I've killed two men, slit an officer's throat with a razor, stabbed two inmates,

> and whipped my first lawyer's ass. I am who
> I am, Janet. Those walls can't stop me.

> The evidence also showed that Williams had committed
> several other criminal acts. A criminal defense
> attorney testified that Williams struck him repeatedly
> during a jailhouse interview on September 28, 2001. A
> prison guard testified that Williams slashed his face
> and throat with a razor blade embedded in a newspaper
> on December 17, 2001. Testimony from two prison
> officers to whom Williams confessed and testimony from
> the surviving victim showed that Williams murdered one
> prison inmate and repeatedly stabbed another with an
> improvised weapon on January 26, 2003. In his
> audiotaped confession about the 2003 prison attack,
> Williams stated that he had also planned to kill a
> third inmate that day but the man's cell door had been
> locked.

Williams v. Georgia, 281 Ga. 87, 88-89, 635 S.E.2d 146, 147-49

(2006).

## II.  PROCEDURAL HISTORY

On April 5, 2004, Petitioner pleaded guilty to malice

murder. (Doc. 11, Attach. 4 at 52-55.) On April 7, 2004,

Petitioner was sentenced to death by lethal injection. (Doc. 9,

Attach. 32 at 71.) The jury found, beyond a reasonable doubt,

the existence of two statutory aggravating factors. (Id. at 69.)

First, the jury found that the murder of Michael Deal was

committed while Petitioner was in a place of lawful confinement.

Second, the jury found that the murder of Michael Deal was

committed by a person with a prior record of conviction for

murder and armed robbery. (Id.)

The trial court denied Petitioner's motion for a new trial. (Doc. 9, Attach. 35 at 79.) The Georgia Supreme Court affirmed his convictions and sentence on September 18, 2006. Williams, 281 Ga. 87, 635 S.E.2d 146. A petition for writ of certiorari to the United States Supreme Court was denied on April 21, 2008. Williams v. Georgia, 553 U.S. 1004, 1004 (2008).

On March 16, 2009, Petitioner filed a state habeas corpus petition in the Superior Court of Butts County. (Doc. 11, Attach. 30.) In March of 2010, Petitioner filed an amended petition. (Doc. 12, Attach. 2.) The court conducted an evidentiary hearing on July 12, 2010, and ultimately denied the petition, as amended, on October 18, 2010. (Doc. 22, Attach. 33.) Further attempts to appeal were similarly unavailing. See Williams v. Humphrey, 568 U.S. 982, 982 (2012).

On April 18, 2012, Petitioner filed a habeas corpus petition in this Court. (Doc. 1.) In his petition, Petitioner raised nine general claims for relief. (Id.) On May 13, 2012, Respondent requested that the Court impose a truncated scheduling order to ensure the efficient disposition of Petitioner's claims. (Doc. 8.) Petitioner, however, opposed Respondent's proposed briefing schedule and requested that the Court implement a scheduling order that would allow Petitioner the opportunity to fully develop each of his claims prior to briefing the merits of his petition for the Court's

5

consideration. (Doc. 24.) After considering Petitioner's concerns, the Court implemented a scheduling order that provided Petitioner with the opportunity to separately request discovery and move for an evidentiary hearing. (Doc. 26.) In addition, the Court's scheduling order directed the parties to brief issues of procedural default, cause and prejudice, and the miscarriage of justice prior to briefing the merits of Petitioner's claims. (Id.)

To date, the Court has already considered Petitioner's Motion to Conduct Discovery and Motion for Evidentiary Hearing. (Doc. 42; Doc. 65.) Now, the parties have filed their briefing with respect to issues of procedural default, cause and prejudice, and miscarriage of justice. The Court must now determine whether any of Petitioner's claims are procedurally defaulted and, if so, whether there is any showing of cause and prejudice or a miscarriage of justice that would excuse that default. If the Court finds that any of Petitioner's claims are procedurally defaulted and there is nothing to excuse the default, Petitioner will not be permitted to brief those claims on the merits.

## ANALYSIS

### I.  STANDARD OF REVIEW

Federal courts are generally not permitted to review claims raised in a federal habeas petition that are procedurally

defaulted. Bailey v. Nagle, 172 F.3d 1299, 1302-03 (11th Cir. 1999). "[W]hether a particular claim is subject to the doctrine of procedural default . . . is a mixed question of fact and law." Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001). There are two general ways in which procedural default can arise to bar a petitioner's claims from federal court review. Bailey, 172 F.3d at 1302-03.

First, federal courts are precluded from reviewing "a state court's rejection of a federal constitutional claim on procedural grounds . . . if the state procedural ruling rests upon [an] 'independent and adequate' state ground." Judd, 250 F.3d at 1313 (citing Coleman v. Thompson, 501 U.S. 722, 729—30, 111 S. Ct. 2546, 2553 (1991)). To determine whether a state court ruling was based on an independent and adequate state law ground, courts employ a three-part test:

> First, the last state court rendering a judgment in the case must clearly and expressly state that it is relying on state procedural rules to resolve the federal claim without reaching the merits of that claim. Secondly, the state court's decision must rest solidly on state law grounds, and may not be "intertwined with an interpretation of federal law." Finally, the state procedural rule must be adequate; *i.e.,* it must not be applied in an arbitrary or unprecedented fashion.

Id. (quoting Card v. Dugger, 911 F.2d 1494, 1516 (11th Cir. 1990)). Typically, state court procedural rules are found to be adequate if they are "firmly established and regularly

7

followed." <u>Walker v. Martin</u>, 562 U.S. 307, 316, 131 S. Ct. 1120, 1127 (2011) (internal citation omitted).

In addition, claims are typically procedurally defaulted and precluded from federal review when a petitioner fails to properly exhaust his claims in the underlying state court proceedings. 28 U.S.C. § 2254(b)(1)(A); <u>see</u> <u>also</u> <u>Bailey</u>, 172 F.3d at 1302 ("A state habeas corpus petitioner who fails to raise his federal claims properly in state court is procedurally barred from pursuing the same claim in federal court absent a showing of cause for and actual prejudice from the default." (citing <u>Wainwright v. Sykes</u>, 433 U.S. 72, 87, 97 S. Ct. 2497, 2506-07 (1977)). "Exhaustion requires that 'state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.' " <u>Mason v. Allen</u>, 605 F.3d 1114, 1119 (11th Cir. 2010) (quoting <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845, 119 S. Ct. 1728, 1732 (1999)). The Supreme Court of the United States has recently explained that the "exhaustion requirement is designed to avoid the 'unseemly' result of a federal court 'upset[ting] a state court conviction without' first according the state courts an 'opportunity to . . . correct a constitutional violation.' " <u>Davila v. Davis</u>, ___U.S.___, 137 S. Ct. 2058, 2064 (2017) (quoting <u>Rose v. Lundy</u>,

455 U.S. 509, 518, 102 S. Ct. 1198, 1203 (1982) (internal quotation marks omitted)).

As part of the requirement that a petitioner must fully exhaust his claims in the underlying state court, a petitioner must "present his claims to the state court 'such that a reasonable reader would understand each claim's particular legal basis and specific factual foundation.' " French v. Warden, Wilcox State Prison, 790 F.3d 1259, 1270-71 (11th Cir. 2015) (quoting Kelley v. Sec'y Dept. of Corr., 377 F.3d 1317, 1344-45 (11th Cir. 2004)). Accordingly, a petitioner cannot "scatter some makeshift needles in the haystack of the state court record. The ground relied upon must be presented face-up and squarely; the federal question must be plainly defined. Oblique references which hint that a theory may be lurking in the woodwork will not turn the trick." Kelley, 377 F.3d at 1344-45 (internal quotation omitted).

"[T]he teeth of the exhaustion requirement comes from its handmaiden, the procedural default doctrine." Smith v. Jones, 256 F.3d 1135, 1138 (11th Cir. 2001). While federal courts are permitted to dismiss habeas petitions that contain unexhausted claims to allow proper exhaustion of those claims in the state court, federal courts are not required to do so "when it is obvious that the unexhausted claims would be procedurally barred in state court due to a state-law procedural default." Snowden

v. Singletary, 135 F.3d 732, 736 (11th Cir. 1998). In other words, "[w]here a return to state court would be futile—because the petitioner's claims would clearly be barred by state procedural rules—a federal court can 'forego the needless judicial ping-pong' and treat unexhausted claims as procedurally defaulted." Hittson v. GDCP Warden, 759 F.3d 1210, 1260 n.56 (11th Cir. 2014) (quoting Snowden, 135 F.3d at 736 (internal quotations omitted)).

Although federal courts are typically prevented from considering claims that are deemed to be procedurally defaulted by a state court or not properly exhausted, a petitioner may be able to overcome the procedural default of his claim to allow federal court review in certain limited circumstances. First, the United States Supreme Court has provided that "[a] state prisoner may overcome the prohibition on reviewing procedurally defaulted claims if he can show 'cause' to excuse his failure to comply with the state procedural rule and 'actual prejudice resulting from the alleged constitutional violation.' " Davila, ___U.S.___, 137 S. Ct. at 2064-65 (quoting Wainwright, 433 U.S. at 84, 97 S. Ct. at 2505; Coleman, 501 U.S. at 750, 111 S. Ct. at 2565). Federal courts have found that "[c]ause exists if there was 'some objective factor external to the defense [that] impeded counsel's efforts to comply with the State's procedural rule.' " Mize v. Hall, 532 F.3d 1184, 1190 (11th Cir. 2008)

(quoting Murray v. Carrier, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645 (1986)). This external factor to the defense can be shown when there is "evidence that could not reasonably have been discovered in time to comply with the rule; interference by state officials that made compliance impossible; and ineffective assistance of counsel at a stage where the petitioner had a right to counsel." Id. In addition to establishing cause, the petitioner must be able to establish prejudice. Henderson v. Campbell, 353 F.3d 880, 882 (11th Cir. 2003). A petitioner can make this showing by establishing that "there is at least a reasonable probability that the result of the proceeding would have been different" had the constitutional violation not occurred. Id.

In addition to establishing both cause and prejudice, procedural default can be excused if the court finds that enforcing the procedural default would result in a fundamental miscarriage of justice. Typically, this exception only "applies if the petitioner can show that, in light of new evidence, it is probable that no reasonable juror would have convicted him." Mize, 532 F.3d at 1190 (citing Schlup v. Delo, 513 U.S. 298, 327, 115 S. Ct. 851, 867 (1995)). In the death penalty context, however, this exception applies if the petitioner can show " 'by clear and convincing evidence' that no reasonable juror would have found him eligible for the death penalty in light of the

11

new evidence." Calderon v. Thompson, 523 U.S. 538, 559-60, 118 S. Ct. 1489, 1493 (1998) (quoting Sawyer v. Whitley, 505 U.S. 333, 348, 112 S. Ct. 2523, 2523 (1992)).

II.  Petitioner's § 2254 Petition

In his petition, Petitioner raises nine different general claims seeking habeas relief in this Court. These claims include:

```
Claim I:     Ineffective Assistance of Counsel
Claim II:    Prosecutorial Misconduct
Claim III:   Juror Misconduct
Claim IV:    Trial Court Error
Claim V:     Inadequate Jury Instructions
Claim VI:    Shackling
Claim VII:   Invalid Guilty Plea
Claim VIII:  Disproportionate Death Sentence
Claim IX:    Challenge to the Death Penalty
```

(Doc. 1 at 7-38.) Within these claims, Petitioner alleges a variety of errors that occurred during the underlying state court proceedings which, in his view, entitles him to habeas relief. (Id.)

Now, Respondent contends that this Court is unable to reach the merits of many of Petitioner's claims because the claims are procedurally defaulted and precluded from federal court review. (Doc. 73.) Respondent contends that Petitioner's claims are either procedurally defaulted because Petitioner failed to properly exhaust his claims in the underlying state court or his claims were found to be procedurally defaulted by the state habeas court. (Id.) In response, Petitioner purports that many

of his claims are not actually procedurally defaulted. (Doc. 69; Doc. 76.) Even if some of his claims are procedurally defaulted, Petitioner contends that the procedural default can be excused by either the ineffective assistance of his trial counsel, the ineffective assistance of his state habeas counsel, or the state's suppression of evidence in this case. (Id.) Because the parties heavily dispute the alleged procedural default of many of Petitioner's claims, the Court will conduct a claim by claim analysis of the parties' positions in order to determine which claims may be briefed on the merits.

### A. Abandoned Claims

As an initial matter, Petitioner has expressly abandoned his intent to pursue several claims initially raised in his habeas petition. Specifically, Petitioner has stated his intention to abandon his (1) challenge to the constitutionality of the Georgia Supreme Court's proportionality review in Claim VIII; (2) challenge based on juror misconduct in Claim III; (3) challenge based on shackling in Claim VI; and (4) challenge to the lethal injection procedures that are raised in Claim IX and a portion of Claim IV. (Doc. 76 at 11.) Because Petitioner has expressly abandoned these claims, the Court will not address any of Respondent's arguments that these claims are procedurally defaulted or not properly before the Court. Petitioner will not

be permitted to brief these claims in his upcoming merits brief. The Court will now consider Petitioner's remaining claims.

## B. Claim I: Ineffective Assistance of Counsel

A large portion of Petitioner's § 2254 petition is dedicated to Petitioner's claim that he received ineffective assistance of counsel at trial. (Doc. 1 at 7-18.) Under his general claim that he received ineffective assistance of counsel, Petitioner raises over 61 specific ways in which his counsel was ineffective at trial. (Id.) Although Respondent concedes that some of Petitioner's ineffective assistance of counsel claims are properly before the Court, Respondent contends that many of Petitioner's claims must be dismissed. (Doc. 73 at 13-26.) Respondent argues that many of Petitioner's claims fail either because they are procedurally defaulted or improperly pled in Petitioner's § 2254 petition. Respondent contends that the Court should not allow Petitioner to brief these procedurally defaulted or insufficiently pled claims on the merits. The Court will address each of Respondent's arguments separately.

First, Respondent contends that many of Petitioner's ineffective assistance claims are procedurally defaulted because Petitioner failed to properly exhaust these claims in the underlying state court proceeding. (Doc. 73 at 13-22.) Specifically, Respondent contends that Petitioner failed to

raise many of his claims in his post-hearing brief in the state habeas proceedings or in his Application for Certificate of Probable Cause ("CPC application") filed with the Georgia Supreme Court. (Id. at 8-11.) Respondent alleges that Georgia Supreme Court Rule 22 requires petitioners to raise all claims in a CPC application and that a failure to do so results in abandonment of those claims. (Id.) Because Petitioner failed to properly allege many of his claims in the CPC application, Respondent contends that these claims are unexhausted and procedurally defaulted under Rule 22. (Id.) Moreover, Respondent contends that any attempt by Petitioner to incorporate any of his claims by reference in his CPC application or his post-hearing brief was insufficient to properly exhaust his claims. (Id.)

For his part, Petitioner argues that his claims are not procedurally defaulted. (Doc. 69.) Petitioner alleges that Rule 22 does not apply to CPC applications. (Doc. 76 at 3-5.) More importantly, Petitioner contends that Rule 22 cannot constitute an independent and adequate state law basis for procedural default because no underlying state court reviewing Petitioner's claims relied on Rule 22 to find that his claims were procedurally defaulted. (Id. at 6-7.) Finally, Petitioner contends that his claims are not procedurally defaulted due to his failure to raise his claims in his post-hearing brief

because there is no obligation that a petitioner brief the entirety of his claims in a post-hearing brief in a state habeas proceeding. (Id. at 4, n.1)

While the Court doubts the fundamental logic of Petitioner's arguments and is inclined to agree that a petitioner has an obligation to raise all of his claims at every stage in the underlying proceedings, ultimately, the Court does not need to determine whether Petitioner failed to properly exhaust his claims in the underlying state proceedings. Rather, this Court finds that Respondent, in its answer to Petitioner's petition, waived any argument that Petitioner's ineffective assistance of counsel claims were not properly exhausted in the state courts. (Doc. 7.) Accordingly, Respondent will not now be permitted to argue Petitioner has not properly exhausted his ineffective assistance of counsel claims.

In the Eleventh Circuit, it is well established that "[t]he exhaustion requirement is not jurisdictional, but rather, is a procedural rule based in comity." King v. Chase, 384 F. App'x 972, 974 (11th Cir. 2010) (citing Thompson v. Wainwright, 714 F.2d 1495, 1503-04 (11th Cir. 1983)). Accordingly, state attorney generals are permitted to waive the exhaustion requirement in federal habeas proceedings. 28 U.S.C. § 2254; see also Hills v. Washington, 441 F.3d 1374, 1376 (11th Cir. 2006). "[T]he state either may waive exhaustion expressly, or impliedly

by failing to raise the issue or arguing that exhaustion would be futile." King, 384 F. App'x at 974 (citing Thompson, 714 F.2d at 1503-04.) The district court has the discretion to accept or reject the state's waiver. Esslinger v. Davis, 44 F.3d 1515, 1524 (11th Cir. 1995). "[T]he district court may invoke [the failure to exhaust procedural bar] sua sponte where, notwithstanding the state's waiver, requiring the petitioner to return to state court to exhaust his claims serves an important federal interest." Id.

In this case, Respondent waived his ability to raise any exhaustion challenge to Petitioner's ineffective assistance of counsel claims in 2012. (Doc. 7.) In his answer to Petitioner's habeas corpus petition, Respondent provided that all of Petitioner's ineffective assistance of counsel claims were properly before the Court because "[t]hese allegations were properly rejected on their merits by the state habeas corpus court." (Id. at 22.) Moreover, Respondent listed these claims as "claims properly before the court for review" and "allegations . . . that are reviewable under § 2254(d)." (Id. at 25.) In the Court's view, this is an express waiver of any potential argument that Petitioner's ineffective assistance of counsel claims are unexhausted. Additionally, the Court sees no reason to reject Respondent's express waiver.

In its current briefing, Respondent attempts to "amend" its answer and argue that Petitioner's ineffective assistance of counsel claims were not properly exhausted. (Doc. 73.) While the Court is doubtful that Respondent's attempt to amend its answer within a response brief at this stage in these proceedings is fair or proper, the Court rejects Respondent's attempted amendment. Respondent expressly waived its claim that these claims were not properly exhausted over six years ago. Moreover, Respondent has provided no argument as to why this Court should allow Respondent to retract its waiver at this stage in the proceedings.[2] Accordingly, the Court accepts Respondent's waiver of any argument that these claims are procedurally defaulted due to Petitioners' failure to exhaust these claims at all stages of the underlying state proceedings.

---

[2] In support of his request to amend, Respondent cites to a footnote in Hittson v. GDCP Warden, 759 F.3d 1210, 1232 n.23 (11th Cir. 2014). Although Respondent provides no argument to explain the relevance of the citation, the Court presumes that this citation is made to argue that Hittson provides a basis or significant change in the law that would allow Respondent to amend its answer. While the Hittson Court acknowledged in a footnote that Georgia courts require a petitioner to raise all claims in a CPC application, this Court does not see how this statement allows Respondent to amend a waiver made over six years ago. Id. This is especially true given that the footnote in Hittson cites to case law that predated Respondent's answer in this case. Id. (citing Pope v. Rich, 358 F.3d 852 (11th Cir. 2004)). Although the Court is unable to fully assess Respondent's intention by citing Hittson, the Court finds that Respondent has offered no basis for allowing Respondent to amend its answer.

Although the Court finds that Petitioner's ineffective assistance of counsel claims are not barred from this Court's review due to Petitioner's failure to properly exhaust these claims, the Court finds that some of Petitioner's claims are insufficiently pled and, therefore, not properly before this Court. When filing a petition pursuant to § 2254, "[h]abeas petitioners must meet heightened pleading requirements." McFarland v. Scott, 512 U.S. 849, 856, 114 S. Ct. 2568, 2572 (1994) (citing 28 U.S.C. § 2254 Rule 2(c)). Accordingly, "generalized allegations are insufficient in habeas cases." Hittson v. GDCP Warden, 759 F.3d 1210, 1265 (11th Cir. 2014). Instead, petitioners are required to "specify all the grounds for relief available to the petitioner" and "state the facts supporting each ground" in their petition. 28 U.S.C. § 2254 Rule 2(c). "In other words, habeas petitions must contain 'fact pleading as opposed to notice pleading.' " Arrington v. Warden, GDCP, CV 117-022, 2017 WL 4079405, at * 1 (S.D. Ga. Sept. 14, 2017) (quoting Hittson, 759 F.3d at 1265 (internal quotations omitted)). Courts have found that this heightened pleading requirement exists because "the habeas petitioner ordinarily possesses, or has access to, the evidence necessary to establish the facts supporting his collateral claim; he necessarily became aware of them during the course of the criminal prosecution or

sometime afterward." Hittson, 759 F.3d at 1265 n.63 (quoting Borden v. Allen, 646 F.3d 785, 810 (11th Cir. 2011)).

In Hittson, the Eleventh Circuit found that several of the petitioner's claims were insufficiently pled in light of the heightened pleading standard in Rule 2(c). Id. at 1265. In that case, some of the insufficient allegations in the petitioner's petition included:

> (a) [S]tate habeas counsel failed to pursue obvious avenues of investigation, resulting in a failure to raise meritorious and potentially meritorious claims. Ineffective Assistance claims which Mr. Hittson believes are "substantial" and which have "some merit" were available to be litigated in state habeas proceedings but post-conviction counsel unreasonable [sic] failed to raise them; and
>
> (b) Undersigned counsel represents, upon information and belief, that Mr. Hittson's original habeas attorneys performed no investigation beyond the limited investigation performed by Mr. Hittson's trial attorneys into Mr. Hittson's background. In fact, original habeas counsel appear to have raised only claims which were apparent from a review of the trial transcript, failing to look beyond the record in order to determine whether Mr. Hittson's trial attorneys failed to discover, for instance, available and compelling mitigation evidence. Further, original habeas counsel failed, absent any reasonable explanation, to bring a claim which was apparent from the record.

Id. at 1265. On review, the Eleventh Circuit found that these generalized allegations were insufficient and that the petitioner "ha[d] not alleged any facts to support his allegations that his state habeas attorneys were incompetent." Id. As a result, the Eleventh Circuit refused to consider the merits of petitioner's insufficiently pled claims. Id.

In light of the guidance offered by Hittson and the heightened pleading standard, the Court finds that the following claims are improperly pled in this case:

(a) Trial counsel failed to conduct an adequate pretrial investigation into the State's case and defenses available to Petitioner at both trial and penalty phases, including medical, psychological, psychiatric, and other defenses affecting Petitioner's mental state before, during, and after his participation in the murder for which he was charged;[3]

(b) Counsel failed to make adequate and timely requests for continuances in order to prepare for trial and failed to make use of time available to adequately investigate and prepare for trial;

(c) Counsel failed to make timely requests for the assistance of a crime scene reconstructionist, a ballistics expert, a forensic pathologist, and a prison expert so that counsel could have conducted a thorough and adequate pretrial investigation into available defenses prior to Petitioner's guilty plea;

\*\*\*

---

[3] For clarity, the Court has retained the lettering system used by Petitioner in his § 2254 petition.

(h) Counsel failed to timely file several pretrial motions necessary to protect Petitioner's right to a fair trial;

(i) Counsel failed to adequately object and litigate that the prosecution should be precluded from introducing evidence of similar transactions and other prior bad acts;

(j) Counsel failed to conduct an adequate pretrial investigation into the voluntariness of Petitioner's statements to law enforcement personnel, and specifically failed to investigate the effect of Petitioner's mental capacity and psychological history on his mental state at the time he provided the incriminating statements;

(k) Counsel failed to adequately present information and evidence in pretrial motions and proceedings and at trial relating to Petitioner's allegedly voluntary waiver of constitutional rights during interrogation by law enforcement;

(l) Counsel failed to ensure that Petitioner made a knowing and informed decision to plead guilty to malice murder;

(m) Counsel failed to obtain and review all records, files, and evidence in the possession of the State to which Petitioner was entitled access;

\*\*\*

(o) Counsel failed to prepare for and conduct an adequate examination of potential jurors with regard to their understanding of the presumption of innocence, potential bias regarding the death penalty and other issues during voir dire in order to ensure Petitioner's right to a fair trial and reliable sentencing, failed adequately to challenge the trial court's improper excusal of certain jurors for hardship reasons, failed adequately to challenge the trial court's improper voir dire of potential jurors, failed to challenge the trial court's refusal to excuse certain jurors for cause, failed adequately to challenge the district attorney's improper voir

dire, and generally failed adequately to protect Petitioner's right to a jury pool and jury which adequately represented the community and which could afford Petitioner the fair trial and reliable sentencing to which he was entitled under the Constitution;

***

(r)　Counsel failed to seek funds for and failed to present a prison expert who could have rebutted aggravation evidence regarding the crimes that occurred while Petitioner was incarcerated as well as provide mitigation evidence;

***

(t)　Counsel failed to use a retained social worker to discuss Petitioner's desire not to present evidence in his defense prior to the weekend before the penalty phased was set to begin;

***

(x)　Counsel failed to object to the admission of several items of evidence and testimony offered by the State during the sentencing phase of trial and permitted the jury to receive and consider evidence that was improper, inadmissible, prejudicial, irrelevant, and/or false;

(y)　Counsel improperly aligned itself with the prosecution during the penalty phase;

***

(aa)　Counsel failed to present witnesses who, in keeping with their opening and closing argument, could have asked the jury to have mercy on Petitioner;

(bb)　Counsel failed to adequately cross-examine the State's witnesses, including but not limited to the failure to impeach, the failure to explore questions of bias and motive on the part of the witnesses, the failure to correct or prevent

false testimony, and, in numerous instances, the failure to conduct any cross-examination[4];

(cc) Counsel failed to present its case and arguments to the jury in a logical, effective manner;

(dd) Counsel failed to understand the role of mitigation, the need for mitigation, what constitutes mitigation, and how to effectively present a case for mitigation at the penalty phase;

\*\*\*

(ff) Counsel failed to adequately challenge the traverse jury;

(gg) Counsel failed to adequately challenge the prosecution's late and prejudicial notice of aggravation and aggravation witnesses;

\*\*\*

(ii) Counsel failed adequately to object to Petitioner's being shacked (sic) and in prison garb in front of the jury;

---

[4] On July 27, 2017, this Court found that Petitioner's ineffective assistance of counsel claim based on his counsel's failure to properly cross-examine Pierre Byrd was procedurally defaulted. (Doc. 65.) Petitioner argued that any procedural default with respect to that claim was excused by the Supreme Court of the United States rulings in Martinez v. Ryan, 566 U.S. 1, 132 S. Ct. 1309 (2012) and Trevino v. Thaler, 569 U.S. 413, 133 S. Ct. 1911 (2013). This Court fully considered Petitioner's argument and found that the exception created in Martinez and Trevino did not apply to Petitioner's case. (Doc. 65.) In response, Petitioner filed a motion for reconsideration. (Doc. 66.) The Court considered that motion and again affirmed that Martinez and Trevino did not excuse Petitioner's procedural default of this claim. (Doc. 77.) At this juncture the Court recognizes that Petitioner never sufficiently pled any facts related to his trial counsel's alleged failure to properly cross-examine Pierre Byrd. Accordingly, Petitioner will not be permitted to address this claim in his merits briefing.

(jj) Counsel failed to object to those portions of the trial court's charge which failed to adequately define mitigating circumstances and misled the jury in other ways;

\*\*\*

(ll) Counsel failed to make informed and competent opening statements and closing arguments at the penalty phase;

\*\*\*

(oo) Counsel failed to use available experts, family members and other resources to assist in persuading Petitioner to present mitigation earlier on in this case;

\*\*\*

(qq) Counsel unreasonably failed to request a continuance once Petitioner agreed to allow a mitigation presentation;

(rr) Counsel failed to subpoena documents and witnesses in a timely and adequate manner;

(ss) Counsel failed to adequately challenge the prosecution for striking prospective jurors on the basis of race and/or gender;

\*\*\*

(uu) Counsel failed to adequately protect Petitioner's constitutional rights during all stages of Petitioner's trial, including but not limited to Petitioner's rights under the Confrontation Clause; failed to represent Petitioner will (sic) full loyalty; and failed to represent Petitioner's best interests;

(vv) Counsel failed to object to the prosecution's attempt to limit the scope of mitigation, confuse the jury as to what constitutes mitigation, and question Petitioner's mental health witness regarding irrelevant, inapplicable jury verdicts;

(ww) Counsel failed to adequately object to and litigate improper testimony, including but not limited to testimony that was hearsay, irrelevant, cumulative, outside the personal knowledge of the witness, and testimony that was highly prejudicial;

(xx) Counsel failed to object to improper and prejudicial statements made by the State during opening and closing arguments at the sentencing phase of trial;

(yy) Counsel failed to request that the court inquire into possible juror misconduct by questioning jurors or by permitting counsel to question jurors;

(zz) Counsel failed to object to defects in the charging documents;

(aaa) Counsel failed to ensure that sensitive bench conferences were kept outside of the hearing of the jury;

\*\*\*

(ccc) Counsel failed to adequately litigate the issue that Georgia's lethal injection protocols are unconstitutional;

(ddd) Counsel failed to ensure that all evidence in this case be preserved for use during Petitioner's habeas corpus proceedings;

(eee) Counsel failed to object to improper and extraneous comments by the judge;

(fff) Counsel failed to ensure that the jury verdicts were on a proper, non-leading and non-prejudicial verdict form;

(ggg) Counsel failed to investigate and present evidence to rebut the aggravating evidence presented by the prosecution; and

\*\*\*

> (iii) Counsel failed to present an opening or closing argument which adequately and meaningfully discussed the evidence and set forth reasons for the jury to impose a sentence less than death.

(Doc. 1 at 7-14.)

In the Court's opinion, these claims are inherently conclusory and insufficient to warrant review on the merits. For example, Petitioner's claim that his trial counsel "failed to adequately object to and litigate improper testimony" is completely devoid of any factual basis from which to assess the claim. (Id. at 16.) The Court is unable to discern what testimony Petitioner believes was improper, why Petitioner believes that testimony was improper, and how his trial counsel was ineffective for failing to object to the testimony. Likewise, Petitioner's claim that his "[c]ounsel failed to adequately challenge the traverse jury" is also impermissibly vague. (Id. at 13.) Without any factual basis to support this claim, the Court is unable to assess what actually was improper about the selected jury and what Petitioner's trial counsel should have done to correct the error. While the Court offers these insufficiently-pled claims as examples, Petitioner has failed to provide any factual basis to support any of the above claims and the Court is unable to assess each claim as pled. Instead, the Court is left attempting to review conclusory allegations that are clearly in violation of the heightened

pleading standard laid out in Rule 2(c). As a result, these claims are insufficiently pled and Petitioner is not permitted to brief these issues in his merits briefing.[5]

In an attempt to save his insufficiently pled claims, Petitioner argues that Respondent's attempt to preclude some of his claims as insufficiently pled is "wildly overbroad." (Doc. 73 at 7.) Moreover, Petitioner contends that Respondent is well aware of some of the claims that Respondent now contends are insufficiently pled because these claims were raised in his CPC application and heavily litigated in the state habeas proceedings. (Id.) While Petitioner may be correct that Respondent is aware of the nature of Petitioner's claims and the factual basis to support each claim, Petitioner misses the point with his argument. Under the heightened pleading standard developed in Rule 2(c), Petitioner has an obligation to support his claims with a clear factual basis from which this Court can assess the merits of his claims. It is wholly irrelevant that Respondent may be aware of facts to support Petitioner's vague allegations. Petitioner's original petition filed in this Court lacks those factual allegations and, as a result, Petitioner has

---

[5] It is unnecessary to go through each claim to explain why that particular claim is insufficiently pled. In the Court's view, the above claims are conclusory on their face and are improperly pled.

failed to properly plead many of his complaints about his trial counsel's performance.[6]

While the Court finds that many of Petitioner's claims are improperly pled, the Court finds that at least some of Petitioner's claims survive. Specifically, the Court finds that the following claims related to Petitioner's trial counsel's failure to properly investigate and present mitigation evidence related to Petitioner's mental health and background are sufficiently pled as to allow Petitioner to brief these claims in a later merits briefing:

> (d) Counsel failed to adequately employ and utilize an independent mental health expert to which Petitioner was entitled under Ake v. Oklahoma, 470 U.S. 68 (1985);
>
> (e) Counsel failed to conduct an adequate pretrial investigation into Petitioner's life and background to uncover and present to the jury evidence of mitigation of punishment;
>
> (f) Counsel failed to present a complete picture of Petitioner's background, including a history of being abused emotionally and physically, history of mental illness in Petitioner's

---

[6] The Court notes that Petitioner states in his § 2254 petition that "[a]ll other claims and allegations in the direct appeal briefs, state habeas pleadings, and in this Petition are incorporated herein by this reference." (Doc. 1 at 4.) To the extent that Petitioner attempts to argue that this reference is sufficient to incorporate the factual record developed in any other proceeding or briefing, the Court finds that this attempt fails to comply with the heightened pleading standard as discussed above. Petitioner cannot simply incorporate other pleadings to support his claims. Rather, he must clearly lay out the factual basis for each of his claims in his § 2254 petition.

family, and a history of having lived with a mentally ill mother;

(g) Counsel failed to locate, interview, and present as witnesses numerous individuals who had compelling mitigating evidence regarding Petitioner;

\*\*\*

(n) Counsel failed to present expert testimony on the impact of Petitioner's traumatic childhood and the pervasive violence in his early life on his subsequent criminal behavior;

\*\*\*

(p) Counsel failed to support their chosen penalty phase strategy by utilizing the experts they had retained, including a mental health expert, a mitigation specialist, and a social worker in order to investigate and present mitigating evidence;

(q) Counsel failed to use their mental health expert to interview Petitioner to obtain information about his background and potential mitigating evidence;

\*\*\*

(s) Counsel failed to provide background materials to the mental health expert pertaining to Petitioner's traumatic childhood;

\*\*\*

(u) Counsel failed to utilize the retained mitigation specialist to investigate potential mitigation in Petitioner's case;

(v) Counsel failed to investigate or to utilize its experts to interview family and friends of Petitioner for potential mitigating evidence;

(w)  Counsel failed to elicit testimony from several
     reasonably available witnesses that would have
     supported the chosen mitigation defense;

                        ***

(z)  Counsel failed to present evidence of the
     violence to which Petitioner was subjected at
     youth detention centers and at Alto State
     Prison;

                        ***

(ee) Counsel failed to present mitigation evidence
     that was reasonably available to counsel during
     Petitioner's aggravation/mitigation trial,
     including mitigation evidence from family
     members, friends and other witnesses;

                        ***

(hh) Counsel failed to timely investigate key
     portions of Petitioner's life and background,
     including but not limited to the family history
     of mental illness, his adolescence, and his
     time at Alto State Prison;

                        ***

(kk) Counsel failed to present significant evidence
     that Petitioner suffered from psychological
     disorders, including dissociation, that
     resulted from the extreme childhood trauma he
     experienced;

                        ***

(mm) Counsel failed to adequately prepare
     Petitioner's witnesses, failed to elicit
     relevant, mitigating evidence that the
     witnesses possessed and failed to limit the
     scope of their testimony to relevant,
     mitigating evidence;

(nn) Counsel failed to prepare those witnesses who
     did testify adequately; failed to elicit
     relevant, mitigating evidence that the

witnesses possessed; and failed to limit the scope of their testimony to relevant, mitigating evidence;

***

(pp) Counsel failed to prepare and present a complete case in mitigation once Petitioner agreed to allow mitigation;

***

(tt) Counsel failed to elicit favorable, mitigating testimony from State's witnesses; and

***

(bbb) Counsel failed to call as witnesses available mental health and medical professions who had evaluated and treated Petitioner.

(Doc. 1 at 7-15.)

After reviewing the above claims, the Court notes that many of the claims are conclusory and appear to suffer the same fatal flaws as the previously discussed insufficiently-pled claims. When read as a whole, however, the Court finds that Petitioner has alleged at least enough facts to allow Petitioner to generally brief issues related to his trial counsel's failure to investigate and present mitigation evidence related to his background and mental health. In his petition, Petitioner has provided some factual allegations that he experienced a traumatic childhood and suffered from violence in prison. Moreover, Petitioner has provided some facts that he suffered from a mental illness that was never properly investigated or

presented to the jury by Petitioner's trial counsel. While the Court finds that Petitioner's factual basis to support these claims is not clearly developed, the Court will allow Petitioner to brief his general claim that his counsel was ineffective for failing to properly investigate and present evidence of his mental health and background during the mitigation portion of his sentencing hearing.[7]

In addition, the Court will also allow Petitioner to brief the merits of his claim that his trial

> [c]ounsel failed to present the aforementioned issues during the Motion for New Trial and on appeal to the Georgia Supreme Court.

(Id. at 17.) Although the Petitioner has not provided any specific facts to support this claim, Petitioner has raised specific errors in his petition that he alleges should have been raised on direct appeal or in a motion for new trial. Accordingly, the Court will allow Petitioner to brief the merits of this claim. Any claim related to any other conclusory allegation Petitioner raised in his § 2254 petition shall not be briefed on the merits.

---

[7] To the extent that any of Petitioner's claims can be construed to cover claims outside of his trial counsel's alleged failure to investigate and present mitigation evidence related to Petitioner's background and mental health, those claims are insufficiently pled and shall not be briefed on the merits.

## C. Claim V: Improper Jury Instructions

In Claim V, Petitioner contends that the trial court improperly instructed the jury during the sentencing phase of his state trial. (Doc. 1.) Without providing any specific detail, Petitioner alleges that "the jury instructions here failed to explain adequately the nature and function of mitigating circumstances and also created a constitutionally impermissible risk that Petitioner's sentencing jury failed to consider available mitigating circumstances." (Doc. 1 at 29.) In its briefing currently before the Court, Respondent contends that the Court should not reach the merits of Petitioner's claim that the jury was improperly instructed because this claim is procedurally defaulted or, alternatively, not sufficiently pled. (Doc. 73 at 30-32.) After careful review, the Court agrees in part.

As a starting point, the Court makes no determination with respect to whether or not Petitioner exhausted his claim that the jury was improperly instructed by the trial court. Rather, the Court finds that Respondent again expressly waived any argument that this claim was not fully exhausted in the underlying state court proceedings. (Doc. 7 at 22.) As discussed above, a state attorney general may waive the State's opportunity to argue that claims are not fully exhausted in the state court proceedings. Hills, 441 F.3d at 1376. In this case,

Respondent expressly stated "that this claim is properly before this Court on the merits as the state habeas court failed to issue a ruling on this allegation." (Doc. 7 at 22.) Additionally, Respondent provided that "errors in the sentencing phases charge to the jury are 'never barred by procedural default.' " (Id. (citing Head v. Ferrell, 554 S.E. 2d 155, 160, 274 Ga. 399, 403 (2001).) Again, the Court finds that Respondent has clearly waived any argument that Petitioner's allegations in Claim V are procedurally barred because Petitioner failed to properly raise these claims in all of his underlying state proceedings. Moreover, Respondent has not provided this Court with any reason to excuse this waiver.

While the Court finds that Respondent has waived any argument that Petitioner failed to properly exhaust this claim, the Court does find that Petitioner's claim must be dismissed because it is insufficiently pled. In his petition, Petitioner alleges that the trial court improperly instructed the jury during the sentencing phase of his trial. (Doc. 1 at 25-26.) Petitioner provides that the "sentencing phase jury instructions in this case, both individually and collectively, were ambiguous, insufficient, vague, and confusing, contrary to law and the sentencer's decision based upon these instructions is unreliable." (Id. at 25.) After citing case law supporting instructions that explain mitigation evidence, Petitioner

alleges that "the jury instructions here failed to explain adequately the nature and function of mitigating circumstances and also created a constitutionally impermissible risk that Petitioner's sentencing jury failed to consider available mitigating circumstances." (Id. (citing Penry v. Lynaugh, 492 U.S. 302 (1989)).

As discussed above, there is a heightened pleading standard in federal court with respect to petitions filed pursuant to § 2254. MacFarland, 512 U.S. at 856, 114 S. Ct. at 2572. Petitioners are expected to provide specific facts to support their claims in their petition. Id. From the face of Petitioner's petition, however, the Court is unable to determine how the trial court's instructions were inadequate. In a conclusory fashion, Petitioner has listed nearly every possible error that could occur with jury instructions. (Doc. 1 at 25.) Petitioner, however, has not provided any specific detail as to how the jury instructions were inadequate, confusing, contrary to law, etc. Without any details about what was included in the jury instructions or what Petitioner contends should have been included in the jury instructions, the Court is left wondering what Petitioner means by "the jury instructions here failed to explain adequately the nature and function of mitigating circumstances" or how those instructions "created a constitutionally impermissible risk that Petitioner's sentencing

36

jury failed to consider available mitigating circumstances."
(Id.) Based on the heightened pleading standard required in
Federal Rule of Habeas Corpus 2(c), Petitioner's allegations are
insufficient. Accordingly, Petitioner will not be permitted to
brief this claim in his merits briefing.

### D. Claim II: Prosecutorial Misconduct

In Claim II of his petition, Petitioner alleges that the
prosecution acted improperly during his trial. Petitioner's
specific claims include that: (1) "[t]he State suppressed
information favorable to the defense at both phases of trial,
and the materiality of the suppressed evidence undermines the
confidence in the outcome of the penalty phase of Petitioner's
trial; (2) "[t]he State elicited false and/or misleading
testimony from State witnesses at trial;" (3) "[t]he prosecution
improperly used its preemptory strikes to systematically exclude
jurors on the basis of race and/or gender;" (4) the prosecution
made "improper and prejudicial remarks" during its cross-
examination of witnesses and throughout the sentencing phase of
the trial. (Doc. 1 at 19-21.) For the following reasons,
Petitioner will not be permitted to brief these claims in his
merits brief.

With respect to Petitioner's first claim that the
prosecution suppressed evidence that would have affected the
outcome of his trial, the Court finds that this claim will not

be briefed on the merits for several reasons. As an initial matter, the Court finds that this claim is insufficiently pled. Like many of Petitioner's claims, Petitioner has failed to provide any factual detail within his petition to support his vague and conclusory allegation about the State's suppression of evidence. Without briefing from the Petitioner requesting discovery and an evidentiary hearing, the Court would have no indication as to what evidence Petitioner was referring to in his petition. (See Doc. 30; Doc. 52.) As stated throughout this order, the factual detail in Petitioner's petition is insufficient.

In his other filings before this Court, Petitioner has specifically alleged that the State suppressed a letter written by the victim's daughter. (See Doc. 52 at 13-18.) In the letter, the victim, Michael Deal, indicated to his daughter that he wanted to be moved to protective custody because he was being housed with an inmate that he helped to convict. (Doc. 39 at 6.) Petitioner claims that the prosecution acted improperly by suppressing this letter, which in Petitioner's view could have shown that someone else was responsible for Mr. Deal's death. (Doc. 52 at 13-18.) For its part, Respondent contends that this Court should not review the merits of Petitioner's claim because this claim is procedurally defaulted and Petitioner has not

shown any cause to warrant any excuse of that default. (Doc. 73 at 33-37.) After careful review, the Court agrees.

The record shows that the state court found that Petitioner had procedurally defaulted his claim through his failure to raise his claim on his direct appeal. (Doc. 22, Attach. 33 at 2.) While Petitioner does not contest that his claim is procedurally defaulted, Petitioner contends that he can overcome the procedural default "for all the reasons stated in Docs. 52 and 55." (Doc. 69 at 8.)[8] After careful review, the Court finds that Petitioner's argument is unpersuasive.

As discussed above, Petitioner must be able to establish both cause and prejudice in order to excuse the procedural default of his claim. Davila, __U.S.__, 137 S. Ct at 2064-65. In the context of a Brady violation, a showing of "cause and prejudice parallel[s] two of the three components of the alleged Brady violation itself." Strickler v. Greene, 527 U.S. 263, 282 (1999). Accordingly, a petitioner can establish cause and prejudice in the Brady context by showing (1) suppression of favorable evidence which can "constitute[] one of the causes for the failure to assert a Brady claim in state court" and (2)

---

[8] The Court again admonishes Petitioner's lack of effort to develop his claims and fully brief this Court on the issues. The Court notes that Petitioner did not even provide any response in his reply brief to Respondent's argument that Petitioner was unable to show cause and prejudice to excuse the procedural default of this claim.

prejudice caused by the suppression, which is demonstrated by "a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different." Id.

In this case, the Court does not need to determine whether Petitioner can demonstrate cause in this case. On July 27, 2017, this Court reviewed Petitioner's claim with respect to the letter written by Mr. Deal and found that the letter would not have had affected the outcome of Petitioner's sentencing. (Doc. 65 at 10-12.) The Court found that the Petitioner's confession, corroborating witness statements, and eventual guilty plea were sufficient evidence of Petitioner's culpability. (Id. at 11.) Moreover, the Court found that the letter would have no impact on the numerous aggravating circumstances presented by the prosecution. (Id.) The Court found that a letter, detailing that the victim was afraid that someone else may harm him, would have had little value in Petitioner's case. (See Doc. 65 at 11 ("That another individual incarcerated with Mr. Deal may have had reason to cause him harm does not alter the facts recounted above. It neither negates Petitioner's culpability, nor detracts from the aggravating circumstances put forward by the State.").) Because this Court found previously, and sees no reason to doubt its previous conclusion, that the letter written by Mr. Deal would likely have had no impact on the outcome of Petitioner's case, the Court finds that Petitioner has failed to establish any prejudice that would warrant excusing the procedural default of this claim. Accordingly,

this claim is procedurally defaulted and Petitioner will not be permitted to brief this claim on the merits.[9]

In addition to his claim regarding the suppressed letter, Petitioner suggests that he maintains a claim based on "any DEA files which have been withheld by the DEA." (Doc. 69 at 8.) In his briefing, Petitioner concedes that this claim is procedurally defaulted. (Id.) However, he vaguely contends that there is cause to excuse any procedural default of this claim due to "the DEA's failure to disclose such evidence . . . as discussed in, e.g., Docs. 30, 34, 37." (Id.) Despite Petitioner's citation to other documents in the record, the Court again finds that Petitioner has failed to show any cause or prejudice to excuse the procedural default of this claim. Petitioner will not be permitted to brief this claim on the merits.[10]

Finally, the Court finds that Petitioner's remaining three claims related to the alleged misconduct of the prosecution are

---

[9] To the extent that Petitioner contends that the procedurally default of this claim can be excused due to the ineffectiveness of his trial counsel, Petitioner's claim still fails. As an initial matter, Petitioner has not developed this claim and cannot rely on this unspecific allegation to establish cause. More importantly, Petitioner would still not be able to establish prejudice to warrant finding that the procedural default of this claim can be excused.

[10] To the extent that Petitioner has any other claim based on the prosecution's alleged suppression of evidence, that claim is insufficiently pled. Petitioner will not be permitted to brief any claim related to the suppression of evidence in his upcoming merits brief.

insufficiently pled. In his final three claims of prosecutorial misconduct—(1)the state elicted improper testimony from various witnesses, (2) the state used preemptory strikes to strike juror members on the basis of race and/or gender, and (3) the state made improper and prejudicial statements during the Petitioner's trial—Petitioner provides no factual support from which this Court can assess his claims. From Petitioner's complaint and briefing currently before the Court, the Court can only guess as to what Petitioner claims entitles him to relief. What was the improper testimony elicited by the state? What jurors were improperly struck? What prejudicial statements were made by the prosecution? How did those statements prejudice the Petitioner and affect the outcome of his trial? Because the Court is unable to answer these questions and Petitioner has not sufficiently pled these claims, he will not be permitted to raise these claims in his upcoming merits brief.

### E. Claim IV: Trial Court Error

In Claim IV, Petitioner raises a variety of issues related to different trial court errors and a challenge to Georgia's lethal injection procedures. (Doc. 1 at 24-27.) As discussed above, the portion of Petitioner's claim challenging Georgia's lethal injection procedures has already been abandoned by Petitioner. (Doc. 76 at 1.) Within Claim IV, however, Petitioner

has alleged nearly 31 other trial court errors that have not been abandoned. (Doc. 1 at 24-27.)

Respondent contends that Petitioner's attempt to seek relief based on any of the trial court errors alleged in Claim IV is not properly before the Court because these claims were determined to be procedurally defaulted by the state habeas court. (Doc. 73 at 40-41.) For his part, Petitioner has not provided any argument that these claims were not deemed to be procedurally defaulted by the underlying state court. After a review of the record, this Court agrees that Petitioner's alleged trial court errors are procedurally defaulted. The state habeas court found that Petitioner had procedurally defaulted this claim by failing to raise this issue on direct appeal. (Doc. 22, Attach. 33 at 4-7.)

Not only is Petitioner's claim procedurally defaulted, Petitioner has also failed to provide any argument to excuse the procedural default of this claim. In his briefing, Petitioner vaguely argues that the default can be excused "had counsel performed competently by adequately raising, preserving and litigating this claim before the trial court and on appeal." (Doc. 69 at 9.) Petitioner goes on to say that he "anticipates elaborating on counsel's deficient performance in his forthcoming merits briefs." (Id.)

Unfortunately, Petitioner will not have the opportunity to brief this claim in his forthcoming merits brief. On May 10, 2012, Petitioner requested a briefing schedule that would provide him the opportunity to brief issues of procedural default prior to briefing the merits of his claims. (Doc. 24.) In an effort to allow Petitioner to be fully heard, the Court adopted Petitioner's suggested briefing schedule. (Doc. 26.) Now, however, Petitioner seeks to avoid discussing the procedural default of this claim by stating his intent to elaborate on the claim in a later briefing.

Before this Court can excuse the procedural default of his claim, Petitioner was directed to provide some basis for this Court to excuse the procedural default. Other than providing a vague allegation that his trial counsel was ineffective, Petitioner has failed to offer any basis for this Court to excuse the procedural default of this claim. Accordingly, the Court finds that Petitioner's claim is procedurally defaulted and that there is no showing to excuse that default. Petitioner will not be permitted to brief this claim in his merits briefing.

### F. Claim VII: Unconstitutional Guilty Plea

In Claim VII, Petitioner contends that his "[m]urder [c]onviction was [o]btained in [v]iolation of his [r]ights [u]nder the Fifth, Sixth and Fourteenth Amendments to the United

States Constitution and <u>Boykin v. Alabama</u>, 395 U.S. 238 (1969)."
(Doc. 1 at 31.) Without providing any specific facts or
argument, Petitioner contends that he did not "knowingly,
intelligently, and voluntarily waive his constitutional rights
when he pled guilty to the murder charge." (<u>Id.</u> at 32.)
Moreover, Petitioner contends that his attorney failed to
apprise him adequately of his rights before he pled guilty to
malice murder. (<u>Id.</u>)

Despite Petitioner's contention, however, Respondent argues
that this Court should not reach the merits of Petitioner's
claim. (Doc. 73 at 40-43.) Instead, Respondent contends that
Petitioner's claims related to his guilty plea were found to be
procedurally defaulted by the state habeas court. (<u>Id.</u>) After a
review of the record, the Court agrees. The state habeas court
found that Petitioner had procedurally defaulted this claim
through Petitioner's failure to raise this issue on direct
appeal. (Doc. 22, Attach. 33 at 7.)

Not only is Petitioner's claim procedurally defaulted,
Petitioner has also failed to provide any argument to excuse the
procedural default of this claim. As discussed above, Petitioner
was directed to establish any cause or prejudice that may excuse
the procedural default of Petitioner's claims. Instead of
complying with this Court's directive, Petitioner simply
provided that

> [t]o the extent these claims are defaulted, the
> default was caused by trial counsel's deficient
> performance, and, had counsel performed competently by
> raising, preserving and litigating these claims at
> trial and on appeal, there is a reasonable probability
> that the outcome of the trial would have been
> different, or that [Petitioner] would have received a
> new capital trial at motion for new trial or on
> appeal.

(Doc. 69 at 9.) Petitioner again goes on to say that he "anticipates elaborating on counsel's deficient performance in his forthcoming merit briefing." (Id.)

As discussed previously, Petitioner's half-hearted effort to show cause and prejudice to excuse the procedural default of his claim is insufficient. This Court implemented a briefing schedule in this case based on Petitioner's own request to brief issues of procedurally default separately from the merits of Petitioner's claims. The Court admonishes Petitioner's blatant attempt to circumvent the scheduling order by providing that he will brief cause and prejudice issues in his later merits brief. At this time, the Court finds that Petitioner's claim based on the circumstances surrounding his guilty plea is procedurally defaulted and that Petitioner has failed to establish any basis to excuse the procedural default of this claim. Accordingly, Petitioner will not be permitted to brief this claim in his forthcoming merits briefing.

## CONCLUSION

For the foregoing reasons, the Court finds that Petitioner will not be permitted to brief any claim raised in Claim II, Claim III, Claim IV, Claim V, Claim VI, Claim VII, Claim VIII or Claim IX. In addition, the Court finds that Petitioner will not be permitted to brief many of his claims related to alleged errors made by his trial counsel. Petitioner will be permitted to brief claims related only to his trial counsel's failure to investigate and present mitigation evidence related to Petitioner's background and mental health. Petitioner may also brief his claim that his trial counsel was ineffective for failing to raise this error on direct appeal. Any claim outside of the scope of these two limited claims will not be considered by this Court.

SO ORDERED this  3ᴿᴰ  day of April 2019.

WILLIAM T. MOORE, JR.
UNITED STATES DISTRICT COURT
42SOUTHERN DISTRICT OF GEORGIA