**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF GEORGIA**
**SAVANNAH DIVISION**

JOSEPH WILLIAMS,

Petitioner,

v.

WARDEN, GEORGIA DIAGNOSTIC PRISON,

Respondent.

CIVIL ACTION NO.: 4:12-cv-106

# ORDER

Before the Court is Petitioner Joseph Williams's Brief on Procedural Default and Exhaustion. (Doc. 147.) Respondent filed his Response, conceding that some claims are properly before the Court for review, but arguing that the rest of Petitioner's claims are unexhausted. (See generally doc. 149.) Petitioner replied. (Doc. 153.) The issue is ripe for the Court's review.

## BACKGROUND AND PROCEDURAL HISTORY

On October 31, 2001, a Chatham County grand jury indicted Petitioner for the murder of Michael Deal inside the Chatham County Detention Center.[1] (Doc. 147, p. 2; see also doc. 9-1, pp. 42–44.) The trial court appointed attorneys Michael Edwards and Tammy Cox Stokes to represent Williams. (Doc. 10-3, p. 7.) After jury selection and voir dire, Petitioner entered a plea of guilty to one count of malice murder, and the case proceeded immediately to the penalty phase.

[1] The details of Petitioner's crime and conviction are set out in the Court's prior merits determination, issued August 30, 2021. (Doc. 105.)

(Doc. 11-4, pp. 52–55.)

Defense counsel told the jury that they would "present no defense" at the penalty phase. (Doc. 11-4, p. 90). The defense presented two mitigation witnesses, however: Donna Parker, who had become Williams's pen-pal about six months earlier, and a social worker, Jeff Yungman, who did not begin to work on Williams's case until voir dire was underway. (Doc. 22-35, p. 26; doc. 12-6, p. 74.) The jury sentenced Williams to death on April 7, 2004. (Doc. 9-32, pp. 69–70.)

Attorney Edwards represented Petitioner on appeal. (Doc. 11-15.) The Georgia Supreme Court affirmed Williams's conviction and sentence on September 18, 2006. Williams v. State, 635 S.E.2d 146 (Ga. 2006), cert. denied sub nom Williams v. Georgia, 553 U.S. 1004 (2008). Williams then sought habeas corpus relief in state court. (Docs. 11-30 & 12-2 (Amended Petition).) Among many others, Petitioner brought the following claim ("Claim One") in his amended state habeas petition:

> Petitioner was deprived of his right to effective assistance of counsel at trial and on appeal, in violation of his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution, and Strickland v. Washington, 466 U.S. 668 (1984).

(Doc. 12-2, p. 3 (capitalization corrected).) Petitioner's Claim One contained 59 subclaims. (See id. at pp. 4–10.) Relevant to the Court's inquiry on procedural default and exhaustion, Petitioner specifically alleged the following subclaims in his amended state habeas petition, among others:

> e. Counsel failed to conduct a timely and adequate pretrial investigation into Petitioner's life and background to uncover and present to the jury evidence in mitigation of punishment;
>
> f. counsel failed to present a complete picture of Petitioner's background at sentencing, including his history of long-term, chronic emotional, physical and sexual abuse; the history of mental illness in Petitioner's family; and history of

having lived with a mentally ill mother;

i. Counsel failed to adequately object and litigate that the prosecution should be precluded from introducing evidence of similar transactions and other prior bad acts;

j. Counsel failed to conduct an adequate pretrial investigation into the voluntariness of Petitioner's statements to law enforcement personnel, and specifically failed to investigate the effect of Petitioner's mental capacity and psychological history on his mental state at the time he provided the incriminating statements;

l. Counsel failed to ensure that Petitioner made a knowing and informed decision to plead guilty to malice murder;

n. Counsel failed to present expert testimony regarding the impact on Petitioner's mental health and subsequent behavior, of his traumatic childhood and the pervasive violence of his upbringing and experiences of incarceration;

r. Counsel failed to seek funds for and failed to present a prison expert who could have rebutted aggravation evidence regarding the crimes that occurred while Petitioner was incarcerated as well as provide mitigating evidence;

t. Counsel failed adequately to utilize the retained social worker in a timely manner to intervene with Petitioner in order to help persuade Petitioner to present evidence in his defense until the weekend before the penalty phase was set to begin;

x. Counsel failed to object to the admission of several items of evidence and testimony offered by the State during and [sic] sentencing phase of trial and permitted the jury to receive and consider evidence that was improper, inadmissible, prejudicial, irrelevant, and/or false;

z. Counsel failed to present as mitigating evidence the violence and violent conditions to which Petitioner was subjected while incarcerated at youth detention centers and at Alto State Prison;

bb. Counsel failed to adequately cross-examine the State's witnesses, including but not limited to the failure to impeach, the failure to explore questions of bias and motive on the part of the witnesses, the failure to correct or prevent false testimony, and, in numerous instances, the failure to conduct any cross-examination;

jj. Counsel failed to present, via a mental health expert, significant evidence of the psychological impact on Petitioner of the extreme childhood trauma he

experienced;

mm. Counsel failed to use available experts, family members and other resources in a timely manner to assist in persuading Petitioner to present mitigation evidence and unreasonably waited until the weekend before trial to use this method to obtain Petitioner's willingness to present evidence; following which, counsel's lack of adequate preparation and investigation hindered counsel's ability to present a comprehensive and persuasive case for life based on all reasonably available mitigating evidence;

oo. Counsel unreasonably failed to request a continuance once Petitioner agreed to allow a mitigation presentation; and

vv. Counsel failed to object to improper and prejudicial statements made by the State during opening and closing arguments at the sentencing phase of the trial.

(Id.) The crux of Respondent's present argument is that Petitioner did not brief many of his claims in his post-hearing state habeas brief (or any time after he filed his state habeas petition), and thus, he failed to exhaust them. (See doc. 149, pp. 5–8.)

In the post-hearing brief in support of his petition, Petitioner alleged the following subclaims in support of his claim that "trial counsel rendered prejudicially deficient performance in the preparation and presentation at Mr. William's capital sentencing proceeding:"

e. While trial counsel took initial steps towards investigating and developing a comprehensive case in mitigation, counsel ultimately failed to prepare a complete penalty phase presentation in support of their chosen strategy;

mm. Counsel unreasonably failed to prepare and present Mr. Williams's family members to credibly and emotionally recount the graphic details of Mr. Williams's horrific childhood and ask the jury for mercy;

jj. Counsel unreasonably failed to explain, using a mental health expert, the severity of Mr. Williams's childhood trauma and Mr. Williams's resultant mental impairments;

n./z. Counsel unreasonably failed to inform the jury of the violence and traumatic events to which Mr. Williams was exposed at Alto State Prison and youth detention centers and their impact on Mr. Williams's subsequent correctional behavior;

* Counsel unreasonably failed to rebut the state's case for future dangerousness by informing the jury that Mr. Williams could be safely and securely incarcerated if he were given a life sentence; and

oo. Counsel unreasonably failed to request a continuance after Mr. Williams agreed to allow mitigation to be presented.

(Doc. 22-23, pp. 72–91; doc. 22-24, pp. 1–18, 18–45, 45–76, 76–91; doc. 22-25, pp. 1–5, 6–12, 12–15.)[2] In addition to arguing the subclaims, Petitioner also argued he was actually prejudiced by the totality of the mitigating evidence omitted from his penalty phase proceeding. (Doc. 22-25, pp. 15–25.) Despite finding that each of these claims was properly before it, the state habeas court denied each on the merits. (Doc. 22-33, pp. 7–14.)

Petitioner then filed an Application for a Certificate of Probable Cause ("CPC") with the Georgia Supreme Court, bringing the same claims that he had asserted in the post-hearing state habeas brief, but, like in the brief, he declined to enumerate and expound upon every claim he asserted in his state habeas petition. (See generally doc. 22-35.) He briefed only those claims he had briefed in his post-hearing brief. (Id.) Petitioner's Application for CPC contained a footnote which stated "Mr. Williams does not abandon any of the claims he has previously made in his petition as amended, or in the evidentiary hearings and motions in this case, which are not herein addressed and incorporates by this reference all of the claims raised in his Petition and Amended Petition, in all motions and pleadings he has filed, in the evidentiary hearing and in subsequent briefing before the state habeas court." (Id. at p. 7.) The Application for CPC was denied on March 19, 2012. (Doc. 22-38.)

[2] Though Petitioner did not allege each subclaim in his state habeas brief by attributing the subclaim's identifying letter-title, (see docs. 12-2 & 22-23), the Court herein identified each subclaim and assigned it its identifying letter-title. One claim was not alleged in the state habeas petition and therefore does not have an identifying letter-title but is marked with an asterisk.

Petitioner then filed a petition for a writ of habeas corpus with this Court. (Doc. 1). The Petition was ultimately denied. (Doc. 105.) Petitioner appealed, and the Eleventh Circuit Court of Appeals held that this Court had improperly dismissed several of Petitioner's claims without notice or an opportunity to respond. The appellate court vacated the Court's procedural default order and remanded the case. Williams v. Warden, GDCP, No. 22-10249, 2024 WL 4439968, at *1 (11th Cir. Oct. 8, 2024).

On remand, the Court granted Petitioner's Motion to Amend his Petition, but only as to the following subclaims of Claim One:

A. Trial counsel were ineffective for failing to investigate and present mitigating evidence of the extreme abuse and torture Mr. Williams experienced as a child;[3]

B. Trial counsel failed to investigate and contest the State's introduction of purportedly similar transactions. Had trial counsel performed effectively, Mr. Williams would not have pleaded guilty and the court would not have admitted the unduly prejudicial evidence that resulted in the death sentence;

C. Trial counsel failed to conduct a constitutionally adequate investigation into the voluntariness of Mr. Williams's incriminating statement to law enforcement, failed to present the necessary facts and law required for the court to prohibit the statement's introduction at trial, and failed at trial to demonstrate that Mr. Williams never voluntarily waived his constitutional rights during those interrogations. Although counsel unsuccessfully sought interim review of this issue, they failed to raise it on direct appeal, even though a favorable, directly on-point United States Supreme Court decision was issued while the case was pending at the motion for new trial stage;

D. Trial counsel failed to ensure that Mr. Williams knowingly, intelligently, and voluntarily waived his constitutional rights when he pleaded guilty to malice murder;

E. Counsel failed to seek funds for and failed to present the testimony of readily available prison experts to contextualize the evidence of other crimes presented in aggravation, to rebut the State's case for future dangerousness, and to present mitigation evidence concerning the conditions and traumatic impact of Mr. Williams's past

[3] This Court previously denied this claim on the merits. (Doc. 105, p. 45.) Petitioner states that he included it in the Amended Petition because the "determination of prejudice under Strickland is cumulative." (Doc. 133, p. 11 n.4.)

institutionalizations;

F. Counsel failed to ask their retained experts, family members, and other resources to discuss Mr. Williams's desire to forgo the presentation of any mitigation evidence until after voir dire was complete and the evidentiary portion of the trial was set to begin;

G. Trial counsel failed to object to the admission of several items of evidence and testimony offered by the State during the sentencing phase of trial and permitted the jury to receive and consider evidence that was improper, inadmissible, prejudicial, irrelevant, and/or false;

H. Counsel failed to adequately cross-examine the State's witnesses, including, but not limited to, the failure to impeach, the failure to explore questions of bias and motive on the part of the witnesses, the failure to correct or prevent false testimony, and in numerous instances, the failure to conduct any cross-examination;

I. Counsel unreasonably failed to request a continuance once Mr. Williams agreed to allow his counsel to present a case in mitigation; and

J. Counsel failed to object to improper and prejudicial statements made by the State during the sentencing phase of trial.

(See generally doc. 133.)

The Parties agree that part of Subclaim E and all of Subclaim I are properly before the Court for review. (Doc. 149, p. 3.) Respondent contests the remaining subclaims, however. Petitioner claims that each of these subclaims was exhausted and thus preserved by review by this Court since they were asserted in his state habeas petition. (Doc. 147, pp. 10–18; doc. 153, pp. 3–6.) Alternatively, as to any claims which were defaulted, Petitioner argues that he can show cause and prejudice to overcome the default by relying on the reasoning set out in Martinez v. Ryan, 566 U.S. 1 (2012), and Trevino v. Thaler, 569 U.S. 413 (2013). (Doc. 147, pp. 18–33.) Respondent counters that, since the only time these subclaims were pleaded was by way of "conclusory sentences in his amended state habeas petition, devoid of any facts or law in support," Petitioner did not exhaust them. (Doc. 149, p. 5.) Respondent also argues that the exceptions

contained in Martinez and Trevino do not apply to excuse any procedural default, and further, that the Court previously determined that Petitioner could not rely on either case to excuse the procedural default in this case. (Id. at p. 8 (citing doc. 65, p. 16).)

## LEGAL STANDARD

A critical prerequisite for any state petitioner seeking federal habeas relief is the requirement that he first properly raise the federal constitutional claim in the state courts. See 28 U.S.C. § 2254(b). "The exhaustion requirement springs from principles of comity, which protect the state court's role in the enforcement of federal law and prevent disruption of state court proceedings." Ward v. Hall, 592 F.3d 1144, 1156 (11th Cir. 2010) (citing Rose v. Lundy, 455 U.S. 509, 518 (1982)). The statute provides that:

> (b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
> (B)(i) there is an absence of available State corrective process; or
> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
>
> (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.
>
> (3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

28 U.S.C. § 2254(b). To exhaust state remedies, a petitioner must fairly present every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. Ward, 592 F.3d at 1156 (citing Castille v. Peoples, 489 U.S. 346, 351 (1989)).

"The teeth of the exhaustion requirement comes from its handmaiden, the procedural default doctrine." Smith v. Jones, 256 F.3d 1135, 1138 (11th Cir. 2001). A claim is procedurally defaulted if the petitioner failed to exhaust his state remedies, and the court to which he would have to present his claims to satisfy the exhaustion requirement would find the claims procedurally barred. Snowden v. Singletary, 135 F.3d 732, 736 (11th Cir. 1998). The doctrine of procedural default also dictates that "[a] state court's rejection of a petitioner's constitutional claim on state procedural grounds will generally preclude any subsequent federal habeas review of that claim." Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001).

Even if the state court never had an opportunity to review the claim and it is thereby procedurally defaulted at federal habeas, a petitioner may obtain federal review of that claim if he can show both "cause" for the default and actual "prejudice" resulting from the default. See Murray v. Carrier, 477 U.S. 478, 485 (1986); Wainwright v. Sykes, 433 U.S. 72, 84–85 (1977). To show cause, the petitioner must demonstrate "some objective factor external to the defense" that impeded his effort to raise the claim properly in state court. Murray, 477 U.S. at 488. Once cause is established, the petitioner also must show actual prejudice from the alleged constitutional violation. See Wainwright, 433 U.S. at 84. To show prejudice, a petitioner must demonstrate that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." McCoy v. Newsome, 953 F.2d 1252, 1261 (11th Cir. 1992).

The Supreme Court, in Martinez v. Ryan, created another exception to the procedural default rule. Martinez allowed a petitioner to rely on errors made by their *state collateral counsel* to establish cause to excuse procedural default of an ineffective *trial counsel* claim when (1) "a State requires a prisoner to raise an ineffective-assistance-of-trial-counsel claim in a collateral

proceeding," as opposed to on direct appeal; (2) "appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of Strickland;" and (3) "the underlying ineffective-assistance-of-trial-counsel claim is a substantial one." 556 U.S. at 14 (citations omitted). In Trevino v. Thaler, the Supreme Court broadened the exception to allow such allegations to constitute cause when state law effectively forecloses review of an ineffective assistance of trial counsel claim on direct appeal, even if state law does not explicitly do so. See Davila v. Davis, 582 U.S. 521, 530 (2017) (citing Trevino, 569 U.S. at 417, 429); see also Trevino, 569 U.S. at 429 ("[W]here, as here, state procedural framework, by reason of its design and operation, makes it highly unlikely in a typical case that a defendant will have a meaningful opportunity to raise a claim of ineffective assistance of trial counsel on direct appeal, our holding in Martinez applies.").

Thus, in this case, while Georgia technically allows a defendant to raise ineffective assistance of trial counsel claims on direct appeal, under Trevino, if Georgia procedure makes it "virtually impossible" for appellate counsel to adequately present an ineffective assistance claim on direct review, "[Georgia] courts in effect have directed defendants to raise claims of ineffective assistance of trial counsel on collateral, rather than on direct, review." Trevino, 569 U.S. at 423–26. This Court's prior Order found that Petitioner could not rely on Martinez and Trevino to excuse the procedural default, since Georgia allows individuals like Petitioner to raise claims of ineffective assistance of trial counsel on direct appeal. (Doc. 65, p. 16.)

Finally, a federal court may also grant a habeas petition on a procedurally defaulted claim, without a showing of cause or prejudice, to correct a fundamental miscarriage of justice. Murray, 477 U.S. at 495–96. A "fundamental miscarriage of justice" occurs in an extraordinary case,

where a constitutional violation has resulted in the conviction of someone who is actually innocent. Id. at 496.

## DISCUSSION

The Court acknowledges Respondent's concession that Subclaim I and the second clause of Subclaim E are properly before the Court for review. Therefore, it is undisputed that Petitioner may brief the merits of the following claims:

**Subclaim (E), in part:** Counsel failed to present the testimony of readily available prison experts to contextualize the evidence of other crimes presented in aggravation, to rebut the State's case for future dangerousness, and to present mitigation evidence concerning the conditions and traumatic impact of Mr. Williams's past institutionalizations; and

**Subclaim (I)**: Counsel unreasonably failed to request a continuance once Mr. Williams agreed to allow his counsel to present a case in mitigation.

However, Petitioner did not exhaust claims he failed to raise in his post-hearing brief or to specifically enumerate in his application for CPC. They are now procedurally defaulted because they would be found by Georgia courts to be procedurally barred. Snowden, 135 F.3d at 736. As this Court has already found, Petitioner cannot rely upon Martinez or Trevino to excuse that default, and he has not argued the miscarriage of justice exception applies.

### I. Subclaims (B), (C), (D), (F), (G), (H), (J), and Part of Subclaim (E) are Unexhausted

Respondent contends that Petitioner procedurally defaulted the remaining claims[4] because

4 The Court previously found that Subclaim (A) was properly before the Court but denied it on the merits after it was fully briefed. (Doc. 105, pp. 29–61.) Petitioner's Reply notes that Respondent only contends that Subclaims (B), (C), (D), (F), (G), (H), and (J) were unexhausted. (Doc. 153, p. 3.) Respondent currently makes no specific argument regarding Subclaim (A), but the Court's prior holdings remain in force: Subclaim (A) was properly before the Court upon this Court's initial review of the Petition, but its merits fail. Consequently, Petitioner may brief this claim only as it relates to the cumulative effect of

they "were neither briefed in Petitioner's state habeas post hearing brief nor raised in Petitioner's CPC application to the Georgia Supreme Court." (Doc. 138, pp. 15–17.) Respondent also argues that the Georgia Supreme Court relied on an adequate and independent state law ground to dismiss these Subclaims—Georgia Supreme Court Rule 22. (Id. at p. 12.)

As to whether failure to brief resulted in a lack of exhaustion, Petitioner counters that he was not required to "take every claim from [his] petition and expand upon it in a post-hearing brief in order to exhaust." (Doc. 147, p. 10.) Citing O.C.G.A. § 9-14-51 and Georgia's Civil Practice Act, O.C.G.A. § 9-11-1, et seq., Petitioner argues that Georgia prescribes a simple notice pleading standard, while the habeas statute is silent on the matter of post-hearing briefs and the rules make them optional anyhow. (Id. at p. 11.) He argues, "[b]ecause neither Georgia's habeas corpus statute nor Georgia's superior court rules require a habeas petitioner to file a post-hearing brief, Williams preserved and exhausted his ineffective assistance of counsel subclaims before the state habeas court when he included them in his amended state habeas petition." (Id. at p. 12.) Petitioner also argues that "Respondent never argued to the state habeas court that Williams had waived any part of his ineffective assistance of counsel claim due to a lack of briefing, . . . and the state habeas court . . . deemed the totality of Williams's ineffective assistance of counsel claim properly before the court for review." (Id. (citing doc. 22-33, pp. 3–14).)

Petitioner also rebuts Respondent's argument regarding Georgia Supreme Court Rule 22, arguing that the Court should not presume that there is an independent and adequate state ground upon which the state court rested its decision. First, Petitioner argues that it is not "clear from the

---

prejudice, which he purports is the reason he continues to argue it despite its prior denial. Briefing its merits otherwise will be futile.

face of the opinion" that the Georgia Supreme Court relied on Rule 22, or any other state procedural rule, as an independent and adequate state ground for denying Williams's CPC application. (Id. at p. 14.) Petitioner secondly argues that Respondent failed to show that Georgia Supreme Court Rule 22 is "firmly established and regularly followed" by the Georgia Supreme Court with respect to CPC applications. (Id. at p. 16.)

The Parties' arguments over Georgia Supreme Court Rule 22 are inapposite. This Court does not sit in a position to determine whether Petitioner acted in accordance with Georgia Supreme Court Rules. However, § 2254 provides that "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State . . . ." 28 U.S.C. § 2254(b)(1). Pursuant to § 2254(c), a state prisoner "shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented" and failed to do so. 28 U.S.C. § 2254(c). Furthermore, the United States Supreme Court has interpreted § 2254(c) to require a state prisoner to present his claims to the state's highest court, even if review is discretionary, when such review is part of the ordinary appellate review procedure. O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999) (involving the Illinois direct appeal process). The Supreme Court stated that this requirement was to "give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." Id.

Petitioner bore the burden to fairly present his claims to, at the least, the state's highest court. Briefly mentioning a claim in prior filings in a lower court, and then not raising them as a

discrete ground upon appellate review, does not satisfy this burden. Cf. Jones v. Campbell, 436 F.3d 1285, 1304 (11th Cir. 2006) (where petitioner did not raise an enumerated claim in state petition and generally referenced a "claim" elsewhere, he did not fairly present the claim to the state courts). In arguing that he was not required—under Georgia's procedural rules or the rules of exhaustion—to expand upon every claim listed in his petition in a post hearing brief at state habeas, Petitioner has failed to show that he *fairly* presented these claims for review by the state's highest court. See McNair v. Campbell, 416 F.3d 1291, 1302 (11th Cir. 2005) ("In order to be exhausted, a federal claim must be fairly presented to the state courts.").

Perhaps failing to expound upon and brief a claim mentioned in a state habeas petition at the state habeas level would not, alone, result in a failure to exhaust. However, Petitioner failed to appeal the state habeas court's apparent denial of the omitted claims without discussion of them; his only inclusion of these claims on his Application for CPC was via a catchall footnote which did not specifically appeal their denial but merely "incorporated" them "by reference," and stated he did not abandon them. (Doc. 22-35, p. 7.) This practice fails to "fairly" present these claims to the Georgia Supreme Court and results in a lack of exhaustion. Indeed, "the exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record. The ground relied upon must be presented face-up and squarely; the federal question must be plainly defined. Oblique references which hint that a theory may be lurking in the woodwork will not turn the trick." Kelley v. Sec'y for Dep't of Corr., 377 F.3d 1317, 1345 (11th Cir. 2004) (quoting Martens v. Shannon, 836 F.2d 715, 717 (1st Cir. 1988)); see also Esposito v. Humphrey, No. 5:12-CV-163 CAR, 2014 WL 7003770, at *33 (M.D. Ga. Dec. 10, 2014) (citing Hittson v. GDCP Warden, 759 F.3d 1210, 1232 n.23 (11th Cir. 2014)) ("Claims

not contained within a petitioner's CPC application are unexhausted.") aff'd sub nom. Esposito v. Warden, 818 F. App'x 962 (11th Cir. 2020).

Because Petitioner did not squarely present Subclaims (B), (C), (D), (F), (G), (H), (J), and part of Subclaim (E) to the Georgia Supreme Court on his application for CPC, they are not exhausted. Pope v. Rich, 358 F.3d 852, 854 (11th Cir. 2004) (holding Boerckel mandates Georgia petitioner fails to exhaust state remedies by failing to petition Georgia Supreme Court for a CPC to appeal denial of state habeas petition); cf., Johnson v. Alabama, 256 F.3d 1156, 1170 (11th Cir. 2001) (citing Hart v. Estelle, 634 F.2d 987, 989 (5th Cir. 1981) (exhaustion of state remedies requirement not satisfied where petitioner "technically asserted the same constitutional deficiency and the same facts" in federal proceeding, but did so "in support of a different legal theory")). Each of these claims are now procedurally defaulted because they would be found by Georgia courts to be procedurally barred. Snowden, 135 F.3d at 736; Mize v. Hall, 532 F.3d 1184, 1190 (11th Cir. 2008) (holding that Mize procedurally defaulted his claim where he never exhausted the claim); see also Judd, 250 F.3d at 1313.

## II. Petitioner's Default is Not Excused by Martinez and Trevino

Under the procedural default doctrine defined by the Supreme Court in Coleman v. Thompson, if a state prisoner "defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law . . . ." 501 U.S. 722, 750 (1991). Under the Coleman decision, even if a petitioner "had no right to counsel to pursue his appeal in state habeas" and even if "attorney error . . . led to the default of [the petitioner's] claims in state court," cause does not exist to excuse the procedural

default. Id. at 757.

In Martinez, the Supreme Court announced a "narrow exception" to the procedural default rule defined by Coleman, to be used in the limited circumstances where a state law "requires a prisoner to raise an ineffective-assistance-of-trial-counsel claim in a collateral proceeding." Martinez, 566 U.S. at 8–9, 14. Martinez's narrow exception to Coleman's procedural default rule applies only where (1) a state requires a prisoner to raise ineffective-trial-counsel claims at the initial-review stage of a state collateral proceeding and precludes those claims during direct appeal; (2) the prisoner did not comply with state rules and failed properly to raise ineffective-trial-counsel claims in his state initial-review collateral proceeding; (3) the prisoner did not have counsel (or his appointed counsel was ineffective by not raising ineffective-trial-counsel claims) in that initial-review collateral proceeding; and (4) failing to excuse the prisoner's procedural default would cause the prisoner to lose a "substantial" ineffective-trial-counsel claim. Id. at 14 (defining a substantial claim as one with "some merit"). The Martinez Court emphasized that "[t]he rule of Coleman governs in all but the limited circumstances recognized here." Id. at 16. Martinez expressly limited its holding to attorney errors in initial-review collateral proceedings, stating, "[t]he holding in this case does not concern attorney errors in other kinds of proceedings, *including appeals from initial-review collateral proceedings*, second or successive collateral proceedings, and petitions for discretionary review in a State's appellate courts." Id. (emphasis added). Subsequently, in Trevino, the Supreme Court extended Martinez's rule to cases where state law technically permits ineffective-trial-counsel claims on direct appeal but state procedures, as a practical matter, make it "virtually impossible" to actually raise ineffective-trial-counsel claims on direct appeal. See Trevino, 569 U.S. at 423–26 (extending Martinez's holding to those state

systems that, in actual operation, make it "virtually impossible" for an ineffective-trial-counsel claim to be presented on direct review).

Petitioner previously argued he could show cause and prejudice to excuse his default of subclaims of his ineffective assistance claim by complying with Martinez and Trevino. (See, e.g., docs. 52 & 59.) The Court found that neither case applied because "Georgia has not made it 'virtually impossible' to raise ineffective assistance of counsel claims on appeal." (Doc. 65, p. 17.) Furthermore, the Court found that, even assuming Martinez and Trevino applied, Petitioner could not meet their requirements because Petitioner could not show that the underlying ineffective assistance of trial counsel claim was "substantial." (Id. at p. 18.) Petitioner acknowledges that this Court has previously held that neither Martinez nor Trevino apply in Georgia because defendants can raise claims of ineffective assistance of counsel on direct appeal. However, Petitioner "respectfully submits that the Court's prior holding was in error and should be reconsidered." (Doc. 147, p. 21.) Petitioner already sought reconsideration of this argument. (See doc. 66.) The Court denied his Motion for Reconsideration, noting that Petitioner presented the same arguments he raised in his initial motion. (See doc. 77, p. 8 ("Because the Eleventh Circuit has declined to extend Martinez and this Court is cognizant of the narrow scope of the exception created in Martinez and Trevino, this Court sees no reason to disturb its prior ruling.").)

Although Petitioner's arguments herein address a different subclaim of the ineffective assistance claim, the Court's prior reasoning regarding the applicability of Martinez and Trevino in Georgia remains controlling. Petitioner has still provided no precedent suggesting the Supreme Court, the Eleventh Circuit, or the State of Georgia itself deems Georgia procedure to explicitly or even "effectively" require criminal defendants to wait to raise ineffective assistance claims until

collateral review. No controlling precedent allows the exception to apply, and this Court remains unconvinced by Petitioner's repeated arguments.

Additionally, Petitioner's renewed attempts to establish cause and prejudice are based on the argument that his habeas counsel was ineffective for failing to fully brief all of his claims in the post-hearing brief or CPC Application. The Court holds herein that the failure to exhaust occurred when Petitioner failed to include specific claims in his CPC application. Martinez and Trevino apply in a very limited context, both in terms of when the attorney's omission constituting cause occurred and what particular omission occurred. As to the first limitation, "the Martinez Court expressly limited its holding to attorney errors in initial-review collateral proceedings." Arthur v. Thomas, 739 F.3d 611, 629 (11th Cir. 2004). Specifically, the Supreme Court stated that "[t]he holding in this case does not concern attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings, second or successive collateral proceedings, and petitions for discretionary review in a State's appellate courts." Martinez, 566 U.S. at 16. Instead, the rule in Coleman, 501 U.S. 722—that inadequate post-conviction counsel does not provide cause to overcome procedural default—governs in all these scenarios.

Even assuming Petitioner's state habeas counsel was ineffective for failing to exhaust, the alleged deficient performance occurred when counsel failed to fairly and squarely present the claim in Petitioner's CPC application. Inadequate performance during the appeal from denial of habeas relief cannot provide cause to overcome default. Martinez, 566 U.S. at 16; Arnold v. Dormire, 675 F.3d 1082, 1087 (8th Cir. 2012) (explaining that Martinez offers no support "for the contention that the failure to preserve claims on appeal from a postconviction proceeding can constitute cause"). Therefore, Petitioner could not implement Martinez or Trevino even if they applied to

Georgia movants. C.f. Davila, 582 U.S. at 530 (declining to extend Martinez to allow a federal court to hear a substantial, but procedurally defaulted, claim of ineffective assistance of appellate counsel when a prisoner's state postconviction counsel provides ineffective assistance by failing to raise that claim.)

Accordingly, since Petitioner cannot establish cause and prejudice to overcome the procedural default of his Subclaims (B), (C), (D), (F), (G), (H), (J), and the Part of Subclaim (E) that argues trial counsel failed to seek funds for prison experts, those claims are **DENIED**. Petitioner may not brief those claims in the forthcoming merits review.

**CONCLUSION**

The Court will only review the merits of the following Subclaims:

**Subclaim (E), in part:** Counsel failed to present the testimony of readily available prison experts to contextualize the evidence of other crimes presented in aggravation, to rebut the State's case for future dangerousness, and to present mitigation evidence concerning the conditions and traumatic impact of Mr. Williams's past institutionalizations; and

**Subclaim (I)**: Counsel unreasonably failed to request a continuance once Mr. Williams agreed to allow his counsel to present a case in mitigation.

The Court will consider the prior arguments raised in support of Subclaim (A) in its determination of the cumulative effect of prejudice under Strickland, 466 U.S. 668, but further briefing of that subclaim is prohibited.

Pursuant to the Court's Scheduling Order, Petitioner shall have **thirty (30) days** in which to file any request for discovery as to his surviving Subclaims. (Doc. 141.) Within **twenty-one (21) days** of Petitioner filing his request for discovery, Respondent shall file his Response.

Petitioner will have **fourteen (14) days** to file a Reply. If the Court permits discovery, a schedule for discovery will be set at that time.

**SO ORDERED**, this 19th day of October, 2026.

R. STAN BAKER, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA